State v. Corrigan.

<hr />

THE STATE v. JULIA CORRIGAN, Appellant.

Division One, November 24, 1914.

1. **INSTRUCTION: Failure to Give Defendant's: Covered by State's: Enticing Female to Prostitution.** In a prosecution for taking away from her father a certain female under the age of eighteen years for the purpose of prostitution, it was not error to refuse to instruct the jury that if said girl went to the house of defendant with Lillian Cameron under the circumstances and conditions testified to by said Lillian the verdict must be for defendant, where the court instructed the jury that unless they found that the defendant took said girl from her father "for the purpose of prostitution as mentioned in this instruction, you will find her not guilty," there being no proof of a conspiracy or any connection between defendant and Lillian Cameron until prosecutrix was in defendant's house; for, although it be conceded that said instruction, though a vicious comment on the evidence and therefore not in proper form, pertained to a proper matter of defense which was complete if Lillian Cameron's testimony was true and therefore it was the duty of the court to give a proper instruction on the subject, yet the very substance of the instruction requested was embodied in the one given.

2. ――――: **Taking Away Girl for Prostitution: No Definition of Taking Away, Etc.** An instruction telling the jury that if defendant did unlawfully and intentionally take away the fifteen-year old girl from her father, "for the purpose of prostitution, by having illicit intercourse with divers men," etc., thereby fully incorporating the language of the statute, is not erroneous because it does not go further and define the words "taking away for the purpose of prostitution" by stating that such taking away might have been accomplished by persuasion, enticement or inducement of money offered or means furnished by defendant; for, though said additional explanation might

have been proper in view of the evidence, if its omission was an error, it was one in defendant's favor.

3. **CROSS-EXAMINATION OF DEFENDANT: Houses of Prostitution in Other Cities: Denied.** Where, in a prosecution of an accused for taking away from her father a girl under eighteen years of age for the purpose of prostitution, the girl has testified that defendant stated to her at the time she entered her house in St. Charles that she had a house of prostitution in Jefferson City, it was not harmful error for the State to ask her on cross-examination if she had and run such a house in Jefferson City, a matter not mentioned in her examination in chief, where defendant answered that she had not. However, if defendant had admitted that she had or had run such a house in Jefferson City .a different case would be up for a ruling. And since no objection was made or exception saved to the State's inquiry of her on cross-examination if she had run such a house in Columbia, the propriety of that inquiry cannot be considered on appeal.

4. **EVIDENCE: Testimony of Event Subsequent to Offense: Harmless Error: Presumption That Officer Performs Legal Duty.** Where defendant was being prosecuted for taking a fifteen-year old girl away from her father for the purpose of prostitution, and a deputy sheriff was offered by the State for the purpose of showing. that defendant's house was being operated by her as a house of prostitution some two or three weeks subsequent to the time the prosecutrix was taken therefrom, and the only testimony of said witness was that as such deputy sheriff he went to said house at the time indicated "with the intention of closing it," leaving as an inference that he did not close it, the error in admitting the testimony was harmless; for, it being presumed that an officer performs his legal duty, the inference is that had the house been operated as one for prostitution he would have closed it, and that he did not close it because upon examination he found it was not being so operated, and therefore the error, in so far as it was not innocuous, was in defendant's favor.

5. ———————: **Prior Good Reputation of Prosecutrix.** It would be error to admit evidence on the part of the State of the prior good reputation of prosecutrix before the defendant had attacked her reputation. But testimony brought out by a cross-examination of the State's witness to the effect that the loathsome disease which prosecutrix had when she was taken from defendant's house of prostitution, was contracted before she went to said house, and testimony of defendant's witness that prosecutrix was on her way to another house of prostitution when said witness persuaded her to go with her to defendant's house, was as serious an attack upon prosecutrix's reputation

for chastity as would have been the offering of character witnesses to show her bad reputation for chastity, and authorized the State in rebuttal to show her reputation was good.

6. ———: **Taking Away Girl For Prostitution: Intent.** The gravamen of the offense of taking away from her father a girl under eighteen years of age for the purpose of prostitution, is the purpose or intent with which the taking away is accomplished; and intent is a hidden mental process, deducible in a criminal case especially, since the State may not use the defendant to prove it, from words or overt acts alone.

7. ———: ———: ———: **Shown By Sexual Acts.** That the prosecutrix was taken away for the purpose of prostitution can in no way be more clearly shown than by the fact that she was received into defendant's house of prostitution, kept there by defendant, and when occasion offered sent by defendant to a room with a man who gave her money and had sexual intercourse with her.

8. ———: ———: ———: ———: **Act of Rape.** Nor need the act of sexual intercourse be shown to have been voluntary. The fact that it was accomplished by the forceful ravishment of the girl by a drunken man sent to her room by defendant, with all its ugly details, may be shown in evidence, as a part of the *res gestae.* Nor does the fact that the evidence of the rape and a recital of its details may add to the punishment imposed by the jury, render the evidence incompetent.

9. ———: ———: ———: ———: ———: **Res Gestae: Accessory.** The details of the force used by the drunken man, sent to prosecutrix's room by defendant, are parts of the *res gestae* and are admissible against defendant, though the rape was done out of her immediate presence and not specifically commanded by her to be done. An accessory before the fact, who instigates the unlawful act, is liable; and if the acts are *res gestae* they are always admissible even though they show the commission of another crime committed in the accomplishment of the crime undertaken.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Richard F. Ralph* for appellant.

(1) Defendant's requested instruction should have been given, or, if the court deemed it improper

in form, should have been treated as a request for proper instruction covering the subject-matter and it became and was the duty of the court to comply with the same. It is the duty of the court, made such by both statute and long established practice, to instruct the jury upon all questions arising in the case which are necessary for their information in giving a verdict, and a failure so to do has always been held as error; particularly is this true where a proper instruction is either offered or asked and the subject-matter particularly pointed out to the court at the time. State v. Clark, 147 Mo. 20. Just such an instruction was given and held proper in State v. Adams, 179 Mo. 339. An instruction of like nature was given by the court in State v. Gibson, 108 Mo. 579. And whenever it is the duty of the trial court upon a proper request to instruct upon any question of law arising upon the evidence, it is equally obligatory upon it of its own motion to instruct the jury upon such a matter whether requested to do so or not. State v. Taylor, 118 Mo. 153. The asking of an instruction improper in form is in effect asking that a proper instruction upon the subject-matter be given. State v. Stonum, 62 Mo. 596; State v. Patrick, 107 Mo. 172. (2) The prosecutrix, in connection with the alleged act of intercourse had by her, was allowed to testify, over objection, as to the amount of pain it caused her, where she felt the pain, what kind of pain it was, as to her body being bloody or not; in short, all details that would ordinarily be asked a prosecutrix where the defendant stood charged with the crime of rape. These matters did not and could not enter into the essence of the offense charged against the defendant and could only have been offered for the sole purpose of inflaming the minds of the jury, appealing to their passion and prejudice. (3) The court erred in allowing witness Rupp, deputy sheriff, to testify regarding a visit he made the home of defendant in 1913, some two months after the acts

charged against the defendant are said to have been committed, and in attempting to close the house. He may have attempted to close it, honestly thinking it to be a house of prostitution, and may have been mistaken. What he thought or what he did concerning the house in January, 1913, did not have the slightest bearing upon what may have occurred there in December, 1912. (4) The court erred in allowing the defendant to be cross-examined regarding matters in noways arising from her examination in chief and regarding matters totally irrelevant to any issue in the case, over objection, and the State's attorney was permitted to interrogate her repeatedly as to her running a house of prostitution in Columbia, and as to her running a house of prostitution at Jefferson City, such cross-examination not being predicated upon the testimony of any witness and not growing out of the testimony of the defendant in chief in any manner, shape, or form. That such testimony was prejudicial to the defendant is apparent, assuming as we must, that the jury was composed of clean minded men; the very nature of the offense charged would tend to some extent to prejudice them and this testimony could not fail to increase that prejudice and to more highly inflame their passions. State v. Lovitt, 243 Mo. 520. (5) The court erred in allowing the State to introduce evidence in rebuttal regarding the reputation of prosecutrix; her reputation had in nowise been attacked by the defense and the only shadow of excuse that can be assigned in justification of the court's action is that Lillian Cameron, a witness for defendant, testified that she met prosecutrix on the street and prosecutrix told witness that "she intended to go out on Lucas avenue that day." This we submit was not an attack upon the reputation or character of prosecutrix; the court could not assume that such language, as a matter of fact, indicated any evil or unlawful intent or purposes

on the part of prosecutrix nor could the jury place any such construction upon it.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The instructions fully cover the case and follow approved precedents. State v. Baldwin, 214 Mo. 290; State v. Jones, 191 Mo. 652; State v. Adams, 179 Mo. 337. (2) The evidence in this cause shows a taking away from the custody of the parents, within the meaning of the law, within the city of St. Louis. Therefore, the circuit court of that city had jurisdiction of this case. State v. Johnson, 115 Mo. 480; State v. Bussey, 58 Kan. 679. (3) The evidence was amply sufficient to support the verdict and showed that defendant was guilty of the commission of the crime charged, in the city of St. Louis. State v. Baldwin, 214 Mo. 290; State v. Johnson, 115 Mo. 480; Kelley's Crim. Law & Prac. (3 Ed.), sec. 550; State v. Bussey, 58 Kan. 679; People v. Crook, 61 Cal. 478; State v. Jamison, 38 Minn. 21; State v. Chisenhall, 106 N. C. 676. (4) The testimony of Lillian Cameron was such an assault upon the reputation of prosecuting witness as to justify the court in admitting testimony in rebuttal tending to show the good reputation of prosecutrix for chastity and virtue. State v. Lovitt, 243 Mo. 510; State v. Dipley, 242 Mo. 476; State v. Jones, 191 Mo. 653. If there was any error in the cross-examination of defendant as to whether or not she had said she was going to send prosecutrix to Jefferson City, the error was harmless. State v. Foley, 247 Mo. 635; State v. Barrington, 198 Mo. 77.

FARIS, J.—From a conviction in the circuit court of the city of St. Louis of a violation of section 4476, and a sentence therefor to imprisonment in the penitentiary for a term of five years, defendant, after the usual motion for a new trial, has appealed.

The specific charge is that defendant took away one Rosa Routhiser, a female under the age of eighteen years, from her father for the purpose of prostitution.

Such of the facts in the case as are necessary to understand the points raised by the appeal and discussed in the opinion, are as follows:

Rosa Routhiser (called hereafter for brevity, the prosecutrix) resided with her parents in the city of St. Louis and was at the time of the commission of the alleged offense not quite fifteen years old. She had studied stenography and in the latter part of November, 1912, while in the waiting room of Schaper Brothers in said city, was accosted by defendant who asked her if she wanted a position. She replied in the affirmative and added that she was willing to do almost anything. Defendant asked her thereupon what she meant, and prosecutrix replied that she was a stenographer looking for employment. Defendant then said to her, "If you are looking for employment you can come out to my house to work;" advising her that her house was in St. Charles, Missouri, and that in order to reach there prosecutrix should take a Wellston car, get off at the end of the line and go into a candy kitchen located there and say she was going to Julia Corrigan's house and that car fare would thereupon be given to her. Prosecutrix did not at the time accept this offer, but within a few days thereafter, namely on Wednesday, December 4, 1912, she left her home, went down town in the city of St. Louis, there took a Wellston car, rode to the end of the car line, made inquiry at the candy kitchen, where she received twenty-five cents from a Greek in charge of the store. She then took a car to St. Charles and went to the house of defendant, which the proof shows to have been at the time, and since, and for a long time prior, a house of prostitution, wherein she was admitted by the defendant, who took her into a room, took her outer clothing off, put a short apron on her and told her she

must get used to everything, as defendant was later on going to send her to Jefferson City where she likewise had a house.

In the house of defendant there were, besides prosecutrix, five or six other girls. This house contained a dance hall with benches about the wall and was furnished with an electric piano. In this hall while prosecutrix remained at defendant's house, the girl inmates and divers men who came there, engaged in dancing. On Friday morning, December 6, 1912, following the advent into this house of prosecutrix, a roughly dressed man, partially drunk, and whose name is unknown, came to defendant's house and she sent him up to a bedroom. Defendant then sent prosecutrix up to this room, where the latter received two dollars from the man. Prosecutrix was then sent back to this room by the defendant and the man therein threw prosecutrix upon the bed and had forcible sexual intercourse with her. The details of this rape are shown in full and at length in the record. To the admission of these details as well as to the fact of rape, defendant strenuously objected and now makes serious contention that such admission is reversible error.

From the intercourse had with this strange drunken man prosecutrix contracted a serious sexual disease, although some considerable effort was made upon the trial to show by a physician, one Dr. Fiegenbaum, who examined and prescribed for prosecutrix, that her infection with this disease could not have occurred at the time of her intercourse in the house of defendant, but that she must have been infected prior to her going to defendant's place.

On the following day the mother and father of prosecutrix having learned that she was at St. Charles in the house of defendant, went out there, found her and took her back home.

The testimony offered by the State as tending to prove that defendant's house was a house of prostitu-

tion both prior, at the time and after prosecutrix went there, though denied by defendant, is abundant, and by palpable inference is admitted by defendant herself in her testimony. We need not, therefore, set out the details of proof showing such character of defendant's house.

One P. L. Rupp, a deputy sheriff, was offered by the State for the purpose of showing that defendant's house was being operated by her as a house of prostitution some two or three weeks subsequent to prosecutrix being taken from there. Objection was made by defendant to the competency of this proof, though the record discloses that all of the testimony given by said Rupp as to the character of defendant's house, consisted in his stating that he as deputy sheriff "went there on January 8, 1913, with the intention of closing it." He does not state what sort of a house it was, nor does the record show whether he closed it or not, except in so far as his language quoted would indicate; and this language by the most obvious inference, indicates that he did not close it.

Testimony on behalf of defendant shows that one Saminos, a Greek employed in the candy kitchen at the end of the car line, gave prosecutrix twenty-five cents to pay her car fare to St. Charles, and that this money had been left at the candy kitchen by defendant with instructions that it was to be given to a little girl who would call for it. The testimony of defendant diametrically contradicts that of prosecutrix as to the manner of, and the inducements which led to the latter's going to the house of defendant, and tends to show that she went accompanied by another girl, one Lillian Cameron. The latter testified for defendant that she met prosecutrix down town in St. Louis on the morning prosecutrix went to defendant's house; that prosecutrix told her she was going out on Lucas avenue to become an inmate of one of the houses of prostitution, which the witness says were then situated on that

street, and requested the said Lillian to accompany her. This the Cameron girl refused to do, but induced prosecutrix to go with her to the house of defendant at St. Charles. There was some corroboration from other witnesses, who ought to have been disinterested, that prosecutrix had gone to defendant's house with the Cameron girl, and had not, as prosecutrix herself swears, gone there alone. This, however, was for the· jury and since they evidently found contra, we need not follow it further.

Defendant testifying for herself denied that she ever saw prosecutrix until the latter came to her house in St. Charles on the morning of the 4th of December, accompanied, defendant swears, by the Cameron girl; that the two girls advised her that they would like to board with her for a week or two; defendant asked, "Who is this little girl?" referring to prosecutrix, and was told that her name was Ruth Roberts. Defendant then said that she didn't like to do anything like that, "*this little girl looks too young.*" Defendant also denied that her house was, or had ever been a house of prostitution, or that she had ever been a sporting woman, or that she had ever sent prosecutrix to a room with any man, as shown by the State, or that any man had intercourse with prosecutrix while the latter was in defendant's house. In the cross-examination of defendant she was asked over the objections and exceptions of her counsel, whether she had ever kept a house of prostitution in Jefferson City. She denied that she had ever done so·and contradicted in this behalf the testimony of prosecutrix and another witness. Defendant was also asked in her cross-examination if she had not kept a house of prostitution at Columbia, Missouri. This she likewise denied; but to this question and answer neither an objection nor an exception was lodged.

In rebuttal the State, over the objections and exceptions of defendant, introduced testimony to show

the good reputation of the prosecutrix for chastity and
virtue. In the court's instructions he limited the pro-
bative effect of this evidence to a consideration there-
of by the jury for the purpose of determining prosecu-
trix's credibility alone. Defendant asked the follow-
ing instruction, to-wit:

"The court instructs the jury that if they believe
from the evidence in this cause that the witness, Rosa
Routhiser, went out to St. Charles to the house of the
defendant, Julia Corrigan, with Lillian Cameron un-
der the circumstances and conditions testified to by said
Lillian Cameron, then they shall return a verdict find-
ing the defendant not guilty."

This statement of the facts will, we think, serve
to make clear such points as we find it necessary to
discuss in the subjoined opinion.

## OPINION.

Many reasons are urged upon us for the reversal
of this case. In the last analysis we may tabulate these
generally under three heads, with subdivisions thereof,
viz.: Alleged error: (1) in refusing to give the in-
struction offered by defendant, which we have set
out in the statement; (2) in failing to instruct on all
of the law of the case, and (3) in the admission of tes-
timony: (a) in the unwarranted cross-examination of
defendant; (b) of the sheriff, that the defendant ran
a house of prostitution in January, 1913, at the iden-
tical house and place where prosecutrix was in De-
cember, 1912; (c) of the reputation of prosecutrix for
chastity, and (d) of the details of the forcible sexual
intercourse had with prosecutrix. Let us look at these
in their order.

I. It will be noted that in substance this refused
instruction tells the jury that if they find that prose-
cutrix went to the house of defendant with the witness
Lillian Cameron under the circumstances testified to
by said Cameron woman, the verdict
should be not guilty. The brief of learned

Instruction.

counsel for defendant concedes in effect that this instruction as requested was not in proper form, but that the idea of it was a proper matter of defense, which it was the duty of the court to embody in a properly couched instruction to the jury. We think we may safely concede both this concession of fact and this contention of law. It was clearly a most vicious comment on the evidence in the form offered; but a complete defense if the jury believed it to be true. But had not the court in a converse sense already submitted the exact defensive thought of this instruction to the jury? We think that it had when it told the jury that unless they found "that the defendant took Rosa Routhiser away from her father Nathan Routhiser for the purpose of prostitution as mentioned in this instruction, you will find her not guilty." Palpably, if defendant took her away, Lillian Cameron did not and *vice versa*, for there was no proof in the record of any conspiracy, or connection, between the defendant and the Cameron girl till prosecutrix was in defendant's house. We are constrained to disallow this contention.

II. The specific error urged upon us touching the alleged defects in the instructions given by the court is that the court failed to define what constituted a "taking away" of prosecutrix for the purpose of prostitution, within the meaning of the statute.

**Instruction: No Definition of Taking Away, Etc.**

The pertinent language of the statute which defines and denounces this crime is: "Every person who shall take away any female under the age of eighteen years from her father . . . for the purpose of prostitution . . . shall, upon conviction thereof, be punished by imprisonment in the penitentiary not exceeding five years." [Sec. 4476, R. S. 1909.] The language of the instruction number one given by the court *nisi*, read upon this point, thus: "If . . . you believe and

find from the evidence that . . . the defendant Julia Corrigan did unlawfully and intentionally take one Rosa Routhiser away from her father, one Nathan Routhiser, for the purpose of prostitution, by having illicit intercourse with divers men,'' etc. It will be seen that the instruction followed the language of the statute which defined the offense. Was it here required to go further and define the words which defined the offense? Reverting for a little more light to the facts in proof, we note that defendant at Schaper Brothers in St. Louis, late in November, 1912, met prosecutrix and asked her if she wanted a position; prosecutrix said she did and was willing to do almost anything. Defendant inquired what her answer meant, and prosecutrix said to her she was a stenographer, looking for work. Defendant then said, ''If you are looking for employment you can come out to my house to work,'' and continuing gave prosecutrix information as to where the the house of defendant was and how to reach it and offered to and did provide car fare for her by leaving with a man in a candy kitchen at the end of the Wellston car line, twenty-five cents to be given to prosecutrix when she asked for it. Prosecutrix on December 4th, following, left home, got the car fare left by defendant with the candy kitchen man at the end of the car line, went to St. Charles and to the house of the defendant and was received therein as an inmate. This evidence in our opinion fully met the requirements of the statute as to what constitutes a ''taking away'' within the purview thereof. Raising without the necessity of again deciding (State v. Miller, 93 Mo. 263; State v. Frank, 103 Mo. 120; State v. Murphy, 118 Mo. l. c. 16) whether where an offense is defined by statute in words which are not technical and which are to be understood in their plain and ordinary meaning, the court *nisi* must yet define these words which define the offense, we are yet fully convinced that in no way were defendant's rights prejudiced by

the failure of the court here to tell the jury that "in order to constitute a taking by the defendant under the law, it is not necessary that the defendant should have used any force or have exercised any physical control over the girl in taking her away, or have been personally with her at the time of her leaving, or have gone in person with her; it is sufficient if defendant procured or caused her to go away by any persuasion, enticement or inducement offered, exercised or held out by defendant to the girl, or by furnishing her the means or money with which to go away. It is not nec essary that the persuasion, enticement or inducement should have been made or offered or the money or means furnished, at the time of the girl's leaving; but if the defendant, for the purposes charged, persuaded or enticed or offered inducements to the girl to leave her father and furnished her means with which to go away and she did not go away at that time, but went away at a subsequent time, and such going away was caused by and was the result of the persuasion, enticement or inducements offered or money or means furnished by the defendant, such facts would show a taking away within the meaning of the law." [State v. Bussey, 58 Kan. 679.]

If some such instruction as the above had been given for the State we must needs have held it good upon the statute and the facts here, but we opine that the defendant would have objected strenuously to its being given. As the matter was left by the court the jury might well have been led to believe that either physical control and personal presence and a present, as distinguished from a future, going away was an absolute prerequisite to conviction. Be all this as may be we are not able to perceive wherein the omission of the court to define "taking away" as such taking away was shown by the proof here, harmed defendant. On the contrary, a proper definition running with the facts would in our judgment have hurt her case with the

jury, and the failure to define these words might well have aided her case. It is of no legal force, that the sequel shows that it did not help the case.

III. Which brings us to alleged error predicated upon the admission of incompetent evidence for the State. The first complaint made is that the State was allowed by the trial court to cross-examine the defendant, who took the stand in her own behalf, as to her running and having houses of prostitution in Columbia and in Jefferson City. Clearly this was not mentioned by her in her examination in chief. So it is error and presumptively hurtful to her case. Pretermitting the statutory permission to impeach a defendant who takes the stand "as any other witness in the case" (Sec. 5242, R. S. 1909), and the well-settled means of impeachment by showing by the accused himself, practically always *dehors* his or her examination in chief, the fact that he or she has been convicted of some crime (State v. Blitz, 171 Mo. 530), were these questions harmful to defendant here? We think not. She denied having such houses, or having had houses of prostitution in either Columbia or Jefferson City. The prosecutrix had already sworn that defendant told her that she had a house of this character in Jefferson City. These questions gave the defendant the opportunity to deny the testimony in this behalf of the prosecutrix and thus to blunt the force of any comment which the State might make in argument, and any inference which the jury might have drawn from defendant's silence. [State v. Larkin, 250 Mo. 218.] If defendant had admitted that she had, or had run such a house in Jefferson City, a different case would be before us.

To the inquiry as to defendant's having a house of prostitution in Columbia neither objection was made

nor exception saved by her; so we need not consider this.

IV. The deputy sheriff was permitted to swear over defendant's objection that as such officer he went to the said house of defendant in January, 1913, "with the intention of closing this house." He **Evidence of Subsequent Matters.** nowhere says whether he closed it or not; nor does he say what sort of house it was. For aught that appears to the contrary in this record, though he went for the purpose of closing it, the benevolent and beneficent character of it, upon a closer and more careful scrutiny, may have worked upon this officer in such wise as to have stayed his intention. At any rate his intention was stayed; inferentially, he did not close it, and he gives no reason for not doing so. Conceding that the mental attitudes and intentions of the sheriff and his deputies are in no way binding upon the defendant, and that the question was highly improper, we are still not able to see how she was hurt in any way by his answer. All presumptions of right, legal and proper action being indulged in favor of the view that this officer did his duty, we are confronted then by the conclusion that if this house was in January, 1913, being operated by defendant as a house of prostitution, the officer would have closed it and would not upon a more intimate examination have abandoned his intention so to do. Being forbidden by the authorities to reverse a case for innocuous error, or error helpful and not hurtful to defendant, we disallow this specific contention. [State v. Thornhill, 174 Mo. 364; State v. Hunter, 181 Mo. 316.]

V. Complaint is likewise lodged that evidence of the prior good reputation of prosecutrix for chastity was admitted by the court to bolster up her reputation, before the defendant had attacked it. If this were

true upon the record it is error, and we
**Good Reputation of Prosecutrix: Testimony of Specific Acts.** must reverse this case. But the record shows that while much evidence was offered by the State to bolster up prosecutrix's reputation, all such offerings were in rebuttal, and made after the defense had strenuously sought to show by cross-examination of the witness Dr. Feigenbaum, that prosecutrix, an unmarried girl, had contracted or must have had a revolting sexual disease before she went to the house of defendant; and likewise after the witness Lillian Cameron had sworn that prosecutrix had importuned her to go with prosecutrix to a house of prostitution on Lucas avenue in St. Louis and become an inmate thereof. Manifestly, testimony of this character was just as surely, and more seriously, an attack upon the reputation of prosecutrix for chastity as would have been the offering of character witnesses to show her evil reputation in that behalf. In the light of such an attack the State in rebuttal was permitted to offer countervailing testimony of prosecutrix's good reputation. [State v. Speritus, 191 Mo. 24; State v. Jones, 191 Mo. 653; State v. Maggard, 250 Mo. 335.] Both in reason and upon authority, this contention is not tenable upon the facts in this case.

VI. This brings us to the last and most serious contention of defendant, viz.: that it was error, greatly **Res Gestae: Affecting Accessory: Rape: Prostitution.** harming defendant's case and accounting by patient inference for the extreme penalty of the law which the jury inflicted on her, to permit prosecutrix to relate before the jury the revolting and heinous details of the rape committed on her by the unknown drunken visitor at defendant's house. The point is a new one in this State.

Going back as a basis for some of the things which we shall say, we observe that it is well-settled that under our statute defining this offense, the gravamen

of the charge is the purpose or intent with which the "taking away" is accomplished. [State v. Adams, 179 Mo. 334; State v. Richardson, 117 Mo. 586; State v. Knost, 207 Mo. 18; State v. Beverly, 201 Mo. 550; State v. Baldwin, 214 Mo. 1. c. 308.] Intent is a hidden mental process, deducible in a criminal case especially, since the State may not use the defendant to prove it, from words or overt acts alone. We do not find here in this record, nor would we ordinarily expect to find in any record, any language of the defendant clearly stating or admitting that the intent in taking away a girl under the age of eighteen years, was for the purpose of prostitution. This intent, which the cases hold is the gist of the offense, must then of necessity be inferred or deduced from other facts or acts in proof, just as in a sense we reason in cases of circumstantial evidence alone. That prosecutrix was taken for the purpose of prostitution can in no way be more clearly or conclusively shown than by the fact that she was received into a house of prostitution, kept there by the defendant and when occasion offered sent by the defendant to a room with a man who gave her money and had sexual intercourse with her. So far and to the extent that *voluntary* sexual intercourse may be shown as an act from which the intent of prostitution may be deduced, we do not understand defendant as contending. The law to this extent is well-settled at any rate. [State v. Johnson, 115 Mo. 480; State v. Bobbst, 131 Mo. 328; 1 Cyc. 158.] The admissibility of the fact of voluntary intercourse for the purpose of showing intent being thus settled by the ruled cases, does it lie in the mouth of defendant to object to the fact of that rape, or to the details thereof, however heinous, which it became necessary to perpetrate on the prosecutrix in order to accomplish that identical intercourse, for which defendant received the price and for which she sent prosecutrix in unto the drunken man? We think not, and we know of no rule of law

or logic which would so hold. This identical question was before the Court of Appeals of New York in the case of Schnicker v. People, 88 N. Y. 192, which was a a case almost on all-fours with the facts here. There it was held that the details of the force used in consummating the sexual acts, were parts of the *res gestae* and admissible against the defendant, though done out of her immediate presence and not specifically commanded by defendant to be done. The point is akin to that which holds an accessory before the fact liable, when the principal by instigation of an accessory robs another and in that robbery, to accomplish it, commits murder. [State v. Rader, *ante,* p. 117.]

So, while it is probable that a part of the extreme penalty visited upon defendant is attributable to the fact that the sexual intercourse with prosecutrix for which defendant sent her in unto the drunken man to be consummated, and for which defendant received the price, was accomplished with force, this is but one of the misfortunes directly arising from her own criminal machinations, and is a part of the *res gestae.* Acts which are *res gestae* are always admissible, even though they may show the commission by defendant of another crime or other crimes. [State v. Anderson, 252 Mo. 83.] Therefore we disallow this contention.

Having thus examined all of the points made by defendant and finding neither in them nor in the record any reversible error, and being thoroughly convinced of the guilt of defendant, we affirm the case. Let this be done.

*Walker, P. J.,* and *Brown, J.,* concur.