## WININGER v. UNITED STATES.
## SUITOR v. UNITED STATES.
### Nos. 10111, 10112.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1935.

Fadjo Cravens, of Fort Smith, Ark., for appellants.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark. (Duke Frederick, Asst. U. S. Atty., and John E. Harris, Asst. U. S. Atty., both of Fort Smith, Ark., on the brief), for appellee.

Before STONE, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

These are appeals from convictions, on joint indictments, and on a joint trial, for attempting to pass or utter counterfeit money. Appellants were also each convicted on another count of possessing such money. But since but one punishment was inflicted, the latter count and conviction need be accorded no discussion beyond bare mention. The facts are wholly similar; by agreement the two cases have been presented here together, and will be dealt with in a single opinion.

The indictment was attacked, both by motion to quash, for that it was found and returned by a grand jury, chosen wholly from counties within the Texarkana Division, whereas the alleged crime was committed in the Fort Smith Division, and by a demurrer, for that (a) it did not charge that the money in question was counterfeit, but per contra, that it was genuine money, and (b) that the indictment does not contain a copy in haec verba of the alleged counterfeit, but upon the point merely avers that "a more particular description of said false, forged and counterfeited obligation of the United States, being to the grand jury unknown." The indictment, however, described the note as "a Federal Reserve Bank Note of the denomination of twenty dollars, in the resemblance and similitude of the true and genuine obligations of the United States."

The indictment on its face puts the venue as being in the "Western District of Arkansas, Texarkana Division." It nowhere sets out the territorial limits of the grand jury's inquisitorial functions. Touching where the component members of the grand jury which found it, hailed from, it is stipulated, that none of them came from the Fort Smith Division. Since the case of Salinger v. Loisel, 265 U. S. 224, 44 S. Ct. 519, 68 L. Ed. 989, followed by this court in Shaw v. United States, 1 F. (2d) 199, 201, it has not been doubted in this, or any other circuit, that an indictment may be returned in a division other than that in which the offense was committed. The case must, of course, be tried, as was here done, in the division where the offense was committed.

The Shaw Case, supra (which was under submission when the Salinger Case was decided, and followed it, as in duty bound), when read in the light of the rule in the Salinger Case, disposes of every complaint made by appellants here. In that case it was said:

"Obviously, this ruling settles the point, unless a distinction is to be made from the fact, that in the case of Salinger v. Loisel, supra, the grand jury which found and presented the indictment was drawn from the body of the district, while in the case at bar the grand jury is characterized in the record, as the 'grand inquest of the United States for the Eastern division of the Eastern district of Arkansas.' This difference ought not seriously to affect the rule, in the light of the fact that the Supreme Court has now held, that the word 'prosecution,' as used in section 53 of the Judicial Code [28 USCA § 114], does not include the finding and presentment of an indictment, and of the further fact that this construction at once brings the question

down to a mere matter of the alleged incompetency or disqualification of component members of the grand jury, which latter question was waived by the failure to file a plea in abatement or other similar plea before entering a plea of not guilty. Teal v. State, 22 Ga. 75, 68 Am. Dec. 482; Coburn v. State, 151 Ala. 100, 44 So. 58, 15 Ann. Cas. 249; State v. Carver, 49 Me. 588, 77 Am. Dec. 275; 8 R. C. L. 113, 114.

"Moreover, it is difficult to appreciate wherein defendant could have been hurt by the fact that the indictment was presented against him by utter strangers presumably, who ought to have been wholly unbiased and unprejudiced. Since he could not thus have been prejudiced, some reliance may be put upon the amended statute of jeofails. Act Feb. 26, 1919, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246 [28 USCA § 391]). It follows that this point should be disallowed."

The record does not bear out the insistence of appellants that the grand jury which found the indictment against them was sworn and impaneled to inquire only as to the Texarkana Division. Such showing as does appear leaves an inference wholly opposed to the contention made, as already forecast. Other cases dealing with these questions are Hill v. United States (C. C. A.) 15 F.(2d) 14, Chew v. United States (C. C. A.) 9 F.(2d) 348, and Biggerstaff v. United States (C. C. A.) 260 F. 926.

In charging that the alleged counterfeit dealt with was in fact counterfeit, the indictment says that it was "a certain false, forged and counterfeited obligation of the United States, to-wit a Federal Reserve Bank note of the denomination of twenty dollars, in the resemblance and similitude of the true and genuine obligations of the United State, to-wit, Federal Reserve Bank notes of the denomination and value of twenty dollars, a more particular description of said false, forged and counterfeited obligation of the United States being to the grand jury unknown."

Upon the above-quoted language of the indictment, appellants contend that there is no charge that the counterfeit was in fact such, but that the language quoted must be construed as an allegation that the note attempted to be uttered was a genuine obligation of the United States. It is charged that the thing dealt with was false, forged, and counterfeited, in the resemblance and similitude of the true and genuine obligations of the United States. True, it is called an obligation of the United States, but the word obligation is modified by the characterization that it is a "false, forged and counterfeited obligation," which, of course, means that it was no obligation at all. The criticism verges upon the trivial and captious.

It must be kept in mind that the prosecution was for an attempt to pass, or utter the counterfeit. So, if it be conceded arguendo, that it is necessary in an indictment for forgery, or counterfeiting to set out in haec verba the instrument alleged to constitute the forgery, this strict rule, ex necessitate cannot always obtain in an indictment for attempting to utter a counterfeit. The object to be accomplished by copying the forged instrument into the indictment is, of course, to apprise accused of the charge he is called on to meet, but largely, to guard the accused against a second prosecution for the identical offense. No statement of any reason why the grand jury finds itself unable to furnish a more certain and definite description of the instrument forged would at all aid the accused, in proving the identity of the offense. Appellants must in any case, where no true copy is set out, rely on the description as set out in the indictment, plus the record in the case. When they have done this in the case at bar, they will be in no danger of a second prosecution for attempting to utter and pass the counterfeit to Mrs. W. H. Taylor on January 11, 1934, at Mena, Polk county, Ark. In a prosecution for possession of a counterfeit, or for an attempt to utter or pass a counterfeit, it is not absolutely necessary to the goodness of the indictment that the counterfeited instrument be set out in the indictment. St. Clair v. United States (C. C. A.) 12 F.(2d) 376. All that is necessary, is, that such description of the counterfeit be set out as to advise the defendant of the nature of the charge and such as with the record will save the defendant in the indictment from again being put in jeopardy, or subjected to a second prosecution for the same offense. Apposite to this point, the Tenth Circuit in the late case of Foster v. United States (C. C. A.) 76 F.(2d) 183, 184, decided March 16, 1935, said this:

"United States notes circulate quite widely, and everyone is thoroughly familiar with them. Appellants could not have failed to understand the crimes with which they were charged as thoroughly as though

the instruments were pleaded in hæc verba. They were furnished the information necessary to prepare their defense, and certainly enough was set forth to sustain the record and judgment as a bar to further prosecution for the same offenses. The contrary is not asserted. It is merely contended that the instruments should have been pleaded in hæc verba. The contention is a technical one and presents no merit because the rights of appellants were not prejudiced in any wise. Dell Aira v. United States (C. C. A.) 10 F.(2d) 102; Blum v. United States (C. C. A.) 46 F.(2d) 850; Davis v. United States (C. C. A.) 49 F.(2d) 267; Hagner v. United States, 285 U. S. 427, 52 S. Ct. 417, 76 L. Ed. 861."

It is further urged by appellants as errors that certain witnesses were on redirect examination permitted to mention an instance whereat they had identified appellants, after they had admitted on cross-examination one occasion on which they had been unable to identify them, and that a witness for appellants in cross-examination was asked by counsel for appellee if he had not heard witnesses for the appellee identify appellants at the preliminary hearing. The witness, without answering definitely, said of the alleged identification, "It is a matter of record." So, the instant record is dark, touching whether witnesses for appellee did or did not identify appellants on an occasion subsequent to their failure to do so, as was elicited on cross-examination; for the record referred to by the witness was never offered, but lost sight of or forgotten, as was any further answer of the witness, in the colloquy which followed between court and counsel. Appellants were not hurt by a question which was never answered.

On the other contention of error, that the court nisi erred in permitting counsel for appellee to elicit from two witnesses, on re-examination, that they had at the preliminary hearing identified appellants as the persons who had attempted to pass the counterfeit money, the facts were that on their examination in chief these two witnesses positively identified appellants. On cross-examination by counsel for appellants, they admitted that they had been unable to identify appellants when they had seen them in jail prior to the preliminary hearing. Thereupon counsel for appellee, over appellants' objection and exception, asked the witnesses if they had not thereafter at the preliminary hearing identified appellants. Their answers were that they had.

The situation is confused in the brief of appellants, wherein the error is said to consist in the fact that appellee was allowed to show prior statements of the witnesses consistent with their testimony at the trial. Even this may sometimes be done in case of impeachment of a witness, in an effort to rehabilitate. State v. Maggard, 250 Mo. 335, 157 S. W. 354, and cases cited; State v. Corrigan, 262 Mo. 195, 171 S. W. 51; State v. Buschman, 325 Mo. 553, 29 S.W.(2d) 688, 70 A. L. R. 904. But this was not what actually happened here; what did happen involves no phase of hearsay. No one appeared to testify what the witnesses had said or done in their identification at the preliminary hearing. The question on the trial was one of recognition, for the purpose of identification. Appellants were utter strangers to the witnesses, who, so far as the record shows, had seen them on but two prior occasions, till they saw them at the trial in the courtroom. It was important to know, as bearing on recognition, how many times the witnesses had seen appellants. When they saw them at the trial, they say they recognized them, as being the same persons who had attempted to pass the counterfeit note. In cross-examination, they admitted having seen appellants in jail, and having failed to recognize them there. In re-examination appellee was allowed to show in aid of recognition a third occasion at which the witnesses had seen appellants and on which they recognized them. In a way, the situation was induced by appellants. Not that they had no right to cross-examine as they did; this was wholly proper. But we are unable to say that in proof of acquaintance, or contacts, making for the ability to recognize the appellants, it was any more improper for the appellee to show an additional contact and the witnesses' reactions thereto than it was for appellants to call attention to the incident at the jail. Whether it would have been proper or improper to have called the jailer in the one case, and the officer who presided at the preliminary hearing in the other, and to have allowed them to say what the witnesses said as to their recognition of appellants, we need not rule. For that is not at all the question on the record, nor anywhere else, except in the brief. We are therefore of the opinion that the record discloses no error meet for reversal, and it follows that it should be affirmed.