THE STATE v. TOM CRAFT, Appellant.—92 S. W. (2d) 626.

Division Two, March 21, 1936.

*L. E. Tedrick* and *John A. McAnally* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

COOLEY, C.—By information filed in the Circuit Court of Dunklin County defendant was charged with robbery in the first degree alleged to have been committed by means of a dangerous and deadly weapon, a pistol. The cause was sent on change of venue to the Circuit Court of Stoddard County, where it was tried, resulting in defendant's conviction and sentence to ten years' imprisonment in the penitentiary. He appeals.

The robbery occurred on October 28, 1933, on a highway between Kennett and Senath, in Dunklin County. There was then no bank at Senath and Jones Brothers, a partnership, operated at that place a business called Jones Brothers' Exchange, where checks were cashed and money advanced for cotton picking, etc. This exchange was managed by one Dee McMunn, who each morning would take from a bank at Kennett to Senath a sufficient sum for the expected needs of the day. There was another similar exchange at Senath operated by a Mr. Caneer, the money for which was brought from Poragould,

Arkansas, and which exchange is generally referred to in the evidence as the Paragould Exchange.

About seven-thirty on the morning of October 28, 1933, McMunn started from Kennett to Senath, alone and unarmed, in an automobile, having in his possession about $4200, belonging to Jones Brothers. On the way, according to his testimony, he was stopped and robbed of the money, at the point of a pistol, by two men whom he met, driving a Chrysler automobile, and who, after passing him, turned and followed him a short distance and then forced him to the side of the road and compelled him to stop. Those two men were subsequently arrested and were identified as Elmer Craft, a cousin of defendant, and Jap Brooks. Both were eventually tried and convicted.

Defendant was not present at the actual robbery. He was prosecuted as a principal, but on the theory that he and the two who actually committed the robbery and two others, Delmar Doherty and Rollie Nicholson, had conspired to commit it and had planned it and arranged to have it done and that it was done pursuant to the conspiracy.

It was shown that Doherty conceived and instigated the robbery. He was arrested shortly after its commission and eventually confessed his guilt. At the time of this trial he had pleaded guilty and received a penitentiary sentence and he was used by the State as a witness against defendant. His testimony tends to implicate defendant as one of the conspirators. Aside from his testimony most of the evidence implicating defendant was that of officers and others who testified to statements and admissions of defendant made after his arrest, which occurred about a week after the robbery. There were, however, other corroborating facts and circumstances shown. It appears that Doherty first approached defendant with the proposition that defendant commit the robbery, but defendant declined, explaining that he had been in trouble before, and did not want any more such experience. Doherty asked him if he could suggest someone who would do it. Defendant suggested Nicholson. Nicholson was seen and conferred with. After thinking it over for a time Nicholson refused to commit the robbery. Defendant then suggested Elmer Craft, whom Doherty did not then know, and went with Doherty to a place called Neely's Landing, where Elmer lived, to see Elmer. Elmer was not at home and word was left with his wife for him to call Doherty. There is testimony from which a jury could find that defendant gave that message and Doherty's telephone number to Elmer's wife. Shortly thereafter Elmer Craft called Doherty and they had a conference. About the next day there was a meeting of all five of the alleged conspirators at the home of one Blackwell. At this meeting the proposed robbery was dis-

cussed and plans were laid. Elmer Craft and, it seems, Brooks, were willing to "pull off" the robbery, but had no automobile and would need one.. Defendant, who was a beer distributor and .had some cars or trucks, was asked to allow the use .of one of his cars, but refused. There is some evidence that he gave as a reason that his cars were too well known. He says it was because he wanted nothing to do with the enterprise.

There was some talk of having Elmer Craft go to St. Louis and steal a car for use in the robbery, but finally it was suggested that with $100 to use as a "down payment" a used car that would answer the purpose might. be procured and Doherty agreed to obtain and furnish the money, which he later did. It appears that Nicholson was delegated to procure the car. Defendant went with him on this mission. They went to two or three places where used cars were kept for sale, and, among others, looked at the Chrysler car which, as was shown at the trial, was used by Elmer Craft and Brooks in the robbery. It should be stated, however, that they did not buy the Chrysler when they first looked at it; not deeming it suitable for the purpose. They wanted a fast car and the Chrysler did not look to be in sufficiently good condition and they went elsewhere to look at a Ford V8. Defendant does not appear to have been with Nicholson when the latter finally purchased the Chrysler. He says of this trip with Nicholson to look for a car that Nicholson told him that he, Nicholson, was not going to have anything to do with the robbery and wanted a car for his own use. And it may be stated here that all of the conferences, of which there were several, some between Doherty and defendant, and one at least at which all five of the alleged conspirators were present, defendant at all times said in effect that he would not have anything to do with the proposed robbery. But he was present at all or practically all of the several conferences at which the proposed robbery was discussed and when the plans for its consummation were made.

There was testimony of admissions and statements made by defendant to the effect that immediately after the robbery Elmer Craft told him he had "pulled the job" and told him where the money had been hidden and that he had advised Elmer not to leave it there long as it might be stolen; that he, defendant, had taken Jap Brooks to Sikeston shortly after the robbery to get him out of the country, for which service Nicholson paid him $100; that Nicholson, after the robbery, gave him $200, telling him it was "his part;" that he also said, when he made the latter statement, that Nicholson owed him,— "He said he knew this money was part of this job and then he said that Rollie owed him, but when he gave it to him he just told him it was his part but he said that Rollie owed him." There was also testimony that in one of the conversations with the officers at which

one of the Jones brothers was present he admitted having gotten $300 of the stolen money and offered to pay it back, and did give Mr. Jones a check with this notation upon it: "This is for money received of Rollie Nicholson, which was money obtained in McMunn robbery." He testified that the notation was not on the check when he signed it. The State's evidence tends to prove that it was.

Defendant, testifying for himself, denied some of the incriminating statements and circumstances that had been testified to by witnesses for the State and attempted to explain others in a manner consistent with his innocence. The testimony need not be detailed because its truth or falsity was for the jury. His testimony, however, and that of one of his witnesses, as well as some statements alleged to have been made by him, as testified to by witnesses for the State, tended to prove that in the talks he had with Doherty in the various conferences we have referred to, it was the messenger of the Paragould Exchange and not McMunn or a messenger or agent of the Jones Brothers' Exchange whom it was contemplated to rob. Defendant denied having participated in a conspiracy to rob anybody, but he contended and offered evidence tending to prove that there had been no proposition or talk of robbing anyone but the messenger of the Paragould Exchange. The State's evidence tended to prove only a conspiracy to rob McMunn, the manager or messenger of the Jones Brothers' Exchange. This fact is important in view of an instruction presently to be considered. Also two of defendant's witnesses, Elmer Craft and Brooks, the two men who actually committed the robbery, testified that they did not use and did not have a pistol or any dangerous or deadly weapon. Their testimony was to the effect that the whole thing was really a fake robbery,—that McMunn had been "fixed" by Doherty, acting through a confederate not appearing as one of the conspirators, and that, pursuant to prior understanding, he turned over the money willingly and voluntarily; that, in short, there was no real robbery but only a staged affair designed to simulate a robbery, to which McMunn was a consenting and conniving party. Further facts, as may be necessary, will be given in connection with our consideration of the legal propositions to which they may apply.

I. Defendant, in his motion for new trial and in his brief here, makes many assignments of alleged error. We shall notice such as seem necessary to the proper disposal of this appeal. Among these, first, the contention that the State did not make a submissible case and that defendant's demurrer to the evidence should have been sustained.

The record in this case is voluminous. We have attempted only to outline the salient facts. As we have stated, there were corroborating facts and circumstances shown which we deem it unnecessary

to set out. It is true that defendant at all times *said* he would not have anything to do with the robbery. But there was evidence from which the jury could find that he was present at all, or practically all, of the conferences held among the conspirators, and especially with the instigating and moving spirit, Doherty, preceding the robbery, and at the meeting at which all were present and at which definite plans were made for the commission of the robbery. He recommended, or at least suggested, a man to commit the overt act, —first Nicholson, and when Nicholson "got cold feet" and refused to participate in the actual robbery, Elmer Craft, who, with Brooks, did do it. He took Doherty to see Elmer Craft for the purpose of getting the latter to commit the robbery, helped arrange for those two to get together and was present at the subsequent conference when all the conspirators were together and the definite plans were made. He went with Nicholson, one of the conspirators (and who was subsequently convicted), to purchase an automobile to be used in the robbery. After the robbery he was in intimate touch with the men who had committed it, conferring about the stolen money, receiving a part of it, knowing it to be the proceeds of the robbery, giving Jones a check in return thereof bearing a notation that it was for money taken in the McMunn robbery, and he took Brooks, one of the robbers, out of the country to enable him, perchance, to escape arrest. From all the facts and circumstances and the inferences that may reasonably be drawn therefrom, the jury could legitimately find that, notwithstanding his repeated verbal assertions that he would have nothing to do with the proposed robbery, he did in fact participate and cooperate in the conspiracy. Of course we are stating the facts from the standpoint of the State's evidence, ignoring, as the court must do when passing upon a demurrer to the evidence, the contradictory evidence offered on behalf of the defendant. We are satisfied the State made a case to go to the jury.

II. Defendant requested an instruction, 8-D, as follows:

"The Court further instructs the jury that even though you may find and believe from the evidence in this case that the defendant Tom J. Craft did conspire or agree with Delmar G. Doherty and others to rob some person or persons other than D. McMunn or other messenger or employee in the service or employment of Irl Jones, Byron Jones and L. R. Jones, doing business under the style of Jones Brothers Exchange, yet you cannot convict the said Tom J. Craft in this case for having such agreement or entering into such conspiracy if you should find that he had such agreement or entered into such conspiracy, but you must convict the said Tom J. Craft, if you convict him at all, for having agreed or conspired to rob the said D. McMunn or other person or persons in the employment of said Irl Jones, Byron Jones and L. R. Jones, doing business as Jones

Brothers Exchange, as set forth in other instructions, and for not having conspired to rob some other exchange, person or persons whomsoever.''

The court refused that instruction in the form requested but modified it by adding thereto ''provided you find that he had not conspired with said persons to commit robbery generally,'' and gave it as thus modified. Complaint is made of such action of the court. We think that complaint well founded. The last part of the instruction as requested, viz., ''and for not having conspired to rob some other exchange, person or persons whomsoever,'' seems somewhat confusing. Perhaps the writer thereof meant to say ''and *not for* having conspired,'' etc. That part of the instruction might well have been omitted entirely. But the purport of the instruction as a whole, in the form requested, is plain, viz.,—that defendant could be convicted only if the jury found that he had conspired to rob McMunn or other messenger or employee of Jones Brothers' Exchange. Under the evidence we think defendant was entitled to an instruction to that effect and that the modification made by the court was improper, as was also a similar modification of defendant's requested Instruction 12-D.

Defendant is charged with a specific crime, the robbery of Dee McMunn. He did not participate in the overt act and is guilty, if at all, only by reason of having conspired with the actual perpetrators to commit that crime, thus making himself an accessory before the fact and under the rule in this State liable as a principal. In 16 Corpus Juris, page 135, section 128, it is said:

''. . . An accessory is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him. So also the fact that the crime is not committed in the particular way designated by the procurer or conspirator does not prevent him from being liable as an accessory before the fact. *But for crimes which are the outcome of a total or substantial departure from his counsel, agreement, directions, or instructions he is not liable.* Where a particular intent is requisite to constitute a crime, an accessory before the fact must have participated in that particular intent.'' (Italics ours.)

The same principle is announced in 1 Wharton on Criminal Law (7 Ed.), section 134, page 143, thus:

''So, if the accessory order or advise one crime, and the principal intentionally commit another; as, for instance, to burn a house, and instead of that he commit a larceny, or, to commit a crime against A., instead of so doing he commit the same crime against B., the accessory will not be answerable; but if the principal commit the same offense against B., by mistake, instead of A., it seems it would be otherwise.''

In State v. Lucas, 55 Iowa, 321, 7 N. W. 583, the defendant and one Wood conspired to rob a mill. They assaulted and tied the watchman (Edwards) and while the defendant went for a sledge with which to open the safe in the mill Wood robbed Edwards. In condemning a certain instruction and reversing the conviction the court quoted and applied 1 Wharton, Criminal Law, section 134, supra, and said: "It follows that the defendant cannot be convicted of a robbery of Edwards, from the mere fact that he abetted his associates in the robbery of Barclay and Hemmingway's safe. If the intention of Lucas was to abet, and share in the proceeds of. any robbery that his associates might commit, a different rule would apply. But this is not the thought of the instruction under consideration." That decision is in point on the facts of the instant case.

The same principle was applied in Watts v. The State, 5 W. Va. 532. It was there charged that Randolph and Pleasants had feloniously and burglariously entered the house of one Perry with intent to assault, shoot, stab and wound one Saunders therein and that the defendant, Watts, had counseled, procured, aided and abetted them so to do. Watts was not present when the entry was made. Th trial court admitted evidence that, after forcibly entering Perry's house, one of the intruders ravished Perry's wife. The Supreme Court held that such evidence should not have been admitted, being evidence of another and different offense than that for which the defendant was on trial, one which he had not contemplated and not "in the ordinary course of things a probable consequence" of the felony planned. The court said: "If the principal totally and substantially departs from his instructions, as if, being solicited to burn a barn, he moreover commits a robbery while so doing, he stands single in the latter crime, and the other is not held responsible for it as accessory." [Citing 3 Greenleaf Evid., sec. 44.]

In State v. Greenwade, 72 Mo. 298, the defendant was charged with the robbery of Ledger. He was not present at the robbery. It was shown that he and two others had arranged to rob one Holt and by the arrangement the defendant was to remain in town and signal his accomplices by firing a pistol when Holt left, which he did. It so happened that Ledger passed the place where the accomplices were first, and they, thinking that Ledger was Holt, attacked and robbed him. They discovered their mistake before completing the offense but nevertheless proceeded with it. It appears that Holt came along and was robbed a few minutes later. Evidence of both robberies was admitted, that relative to the Holt robbery over the defendant's objection. This court (by a three to two majority) sustained the admission of that evidence, saying [l. c. 300]:

"There is no doubt that the State had no right to prove separate and distinct robberies from the one for which defendant was on

trial; but if the evidence tends to prove the commission of the offense for which the prisoner stands indicted, it is no valid objection to it, that it tends to prove another and distinct offense. The two robberies occurred upon the same night and within a few minutes of each other, and in pursuance of the same conspiracy. The complicity of the defendant with one was necessary to show his complicity with the other, and, therefore, the court admitted the evidence of both, although the robbery of Holt was the main design and that of Ledger merely incidental.''

Further illustrative of the distinguishing difference in facts between the Greenwade case and the one at bar, which led the court to hold as it did in the Greenwade case, but showing also that the court in said case recognized the principle that one charged with a certain robbery on the theory of conspiracy, as here, cannot be convicted upon proof of another and distinct robbery to the commission of which he did not conspire, we quote again from that case, 72 Mo. l. c. 306:

''It is not doubted that a conspiracy in which defendant participated to rob Holt would not justify a conviction on an indictment for robbing Ledger, without defendant's knowledge or consent to such robbery, but if the subordinates robbed Ledger under a mistake, or assaulted him with intent to rob, under a mistake, and upon a belief that he was Holt, and the defendant was advised subsequently of the facts, and assented to them and participated or acquiesced in the result, he was clearly guilty, and this was left to the jury in the instructions.''

Similar in principle to the foregoing authorities, this court said in State v. May, 142 Mo. 135, 153, 43 S. W. 637, quoting from 1 Bishop, New Criminal Law, section 637:

''Where two combine to fight a third with fists, if death accidentally results from a blow inflicted by one, the other also is answerable for the homicide. But if the one resorts to a deadly weapon without the other's knowledge or consent, he only is thus liable.''

In the instant case there was no evidence of a conspiracy to commit robbery generally. Had there been such evidence we would have a different question with which to deal. But here, as we have stated, all of the State's evidence was to the effect that the conspiracy was to rob the agent of the Jones Brothers' Exchange, who carried their money,—a specific robbery, and none other. From defendant's side, while he disclaimed having conspired to rob anybody, there was evidence to the effect that the only robbery proposed or talked about was the robbery of the messenger of the Paragould Exchange,—a separate and distinct, but single, offense; one not charged in the information, and which, moreover, was not committed. But even if it could be found under the evidence that the conspirators

planned and authorized the two they selected to do the overt act to rob the messenger of either one or the other of said two exchanges, that cannot, we think, be held to constitute a conspiracy to *commit robbery generally*. The said modification of instructions 8-D and 12-D was therefore erroneous, and we think prejudicially so.

Defendant was on friendly terms with the Jones brothers. In fact it appears from the State's evidence that in one of the conversations in which the State claims defendant virtually admitted having been a party to the conspiracy, this transpired: L. R. Jones said to defendant, "Well, it is bad enough to turn hi-jacker but it is a funny thing when you rob your friends," to which defendant replied, "I didn't understand I was robbing you. I thought it was a Paragould Exchange we were getting." And it was at that time that defendant offered to return the $300 and gave the $300 check above mentioned. It is conceivable that even if defendant had been willing to rob the Paragould Exchange he would not have been willing to participate in the robbery of the Jones Brothers' Exchange. At least he had the right to have the jury pass upon that question. His alleged co-conspirators had all violated the criminal laws previously. Some of them, including himself, had been implicated in prior robberies. These facts were before the jury. The jury may have thought them a band of criminals ready and willing to rob whomsoever they could and wherever opportunity offered, and when the court injected into the case, by modifying said instructions in the manner complained of, permission to find that defendant and his alleged accomplices had conspired to commit robbery generally, the jury may have understood, and doubtless did understand, that they were authorized under the evidence so to find, and to convict defendant on that theory even though they did not believe beyond a reasonable doubt that he had conspired to commit the crime charged. We are constrained to hold that the error complained of in regard to these instructions, as above noted, requires reversal of the judgment.

III. Stress is laid by appellant upon the court's failure to instruct upon robbery without a dangerous and deadly weapon and upon grand larceny. The principal instruction given for the State, No. 5, hypothesizes the facts necessary to be found to justify conviction of robbery by means of a deadly weapon and authorizes conviction of robbery in the first degree and the assessment of a minimum punishment of not less than ten years' imprisonment if the facts are so found. It further directs that if the jury do not find the facts as therein hypothesized they shall acquit the defendant. Robbery in the first degree may be committed without the use of a deadly weapon, in which event the minimum punishment is only five years' imprisonment. [Sec. 4061, R. S. 1929, Mo. Stat. Ann.,

sec. 4061, p. 2863, and see State v. Harris, 337 Mo. 1052, 87 S. W. (2d) 1026.] Robbery in the first degree without the use of a dangerous and deadly weapon is included in the charge of robbery by means of such weapon. Larceny is also so included, and where the charge is robbery and there is evidence of a larcenous taking of property but the element of force such as to constitute the offense of robbery is wanting there should be an instruction submitting larceny. [State v. Weinhardt, 253 Mo. 629, 161 S. W. 1151.] Defendant introduced evidence which, if true, tended to show that no weapon was used in the alleged robbery, also that in fact there was no robbery, since, as those witnesses claimed, the taking of the money from McMunn was not by force or violence or putting him in fear, etc., but with his connivance. It is not for this court, nor was it for the trial court, to pass upon the credibility of that evidence. It was for the jury. It presented an issue that was a part of the law of the case, upon which it was the court's duty to instruct the jury, whether so requested by the defendant or not, under the statute, Section 3681, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3681, p. 3227). We say this for the guidance of the court in the event of another trial. On the record before us we would not be inclined to reverse for this error. Not only did said Instruction No. 5 direct *an acquittal* if the jury failed to find the facts therein hypothesized authorizing conviction of robbery by means of a deadly weapon, but defendant asked and was given an instruction, 14-D, which was the converse of the State's Instruction No. 5, hypothesizing the same facts and directing an acquittal unless those facts were found. He did not ask any instructions submitting a lower grade of offense. If, pursuant to the conspiracy, there was a robbery or larceny, defendant was not entitled to an acquittal even though the jury failed to find that a deadly weapon was used and both instructions were erroneous in directing an acquittal unless such fact were found in conjunction with the other facts hypothesized. But defendant, by requesting his Instruction 14-D, acquiesced in and adopted the error An instruction submitting robbery without the use of a deadly weapon, or larceny, would have been inconsistent with the direction for an acquittal contained in said instructions 5 and 14-D.

IV. Defendant requested an instruction, 3-D, reading as follows: "The Court instructs the jury that the law requires the State to prove the defendant's guilt beyond a reasonable doubt before a conviction can be had, but you are instructed that the law does not require the defendant [to prove an alibi beyond a reasonable doubt, nor does the law require the defendant] to prove beyond a reasonable doubt that he did not, prior to the alleged robbery, enter into a conspiracy with another or others to commit said alleged robbery or to aid or assist therein as set forth in other instructions."

The court modified it by striking out the words which we have enclosed in brackets and gave it as so modified. Defendant also requested an Instruction 2-D, on alibi, which the court refused. In such action of the court we find no error. We think an alibi instruction was not called for under the evidence in this case. There was no contention that defendant was present when the overt act of robbery was committed, nor in the vicinity thereof. The prosecution did not proceed on that theory. Under the evidence an instruction on alibi, such as requested by defendant, would have been confusing and misleading. [State v. Gatlin, 170 Mo. 354, 369-70, 70 S. W. 885.]

V. Defendant complains of the refusal of his requested Instruction 15-D. This instruction is long and we shall not copy it herein. It defines accessory before the fact and accessory after the fact and instructs in substance that defendant can be convicted only if found to have been an accessory before the fact. It contains one clause that might have been misleading or confusing to the jury in view of the evidence, viz., "That a 'principal' is one actually or constructively present that is near enough to aid or assist if necessary in perpetrating the crime, if a crime is committed." That clause might have been misunderstood by the jury. While, without that clause, the instruction might well enough have been given, we do not consider its refusal reversible error, as we think the thought embodied therein is sufficiently expressed in other instructions.

VI. Nicholson testified as a witness for defendant. Elmer Craft and Brooks had testified for him at a former trial at which the jury failed to agree and their testimony given at such former trial was, by agreement of the parties, read in evidence at this trial. In rebuttal the State read in evidence, over defendant's objections signed statements or confessions which each of them had made shortly after they were arrested. It is argued by appellant that those statements were inadmissible because "These documents did not contradict defendant on any material point. Also they were statements that were made after the alleged conspiracy and after the robbery." They were not offered as statements of co-conspirators and as being competent against defendant for that reason. On such ground they would not have been admissible, the conspiracy having ended. They were offered to contradict testimony given by the witnesses, in other words by way of impeachment of the witnesses, and insofar as the statements did so contradict testimony given by the witnesses on the trial, as they did in material respects, they were competent for that purpose.

VII. We have discussed one modification of defendant's requested Instruction 12-D. The court further modified it by striking out

the portion which we enclose in brackets. The instruction as requested read:

"The Court instructs the jury that (even though you should find and believe from the evidence that the defendant Tom J. Craft, after the alleged robbery mentioned in the evidence was committed, talked with some of the parties or persons connected with said robbry and even though you should find that the defendant, Tom J. Craft, received some of the money taken in said robbery or took the witness, Jap Brooks, from Poplar Bluff to Sikeston to aid the said Jap Brooks to escape or did other things to aid Rollie Nicholson, Elmer Craft, Jap Brooks and Delmar G. Doherty to conceal said robbery, yet) you cannot find the defendant guilty unless you find and believe from the evidence and beyond a reasonable doubt that the defendant, prior to said robbery conspired, confederated and agreed as set forth in other instructions with Delmar G. Doherty, Elmer Craft, Jap Brooks and Rollie Nicholson, or one or more of them to commit said robbery or aid or assist one or more of said persons to commit said robbery, and unless you so find such prior conspiracy as aforesaid then you will find the defendant not guilty."

Defendant insists that such modification was prejudicially erroneous. We think not. The portion stricken out was in the nature of a comment on certain portions of the evidence and moreover it did not refer to other facts and circumstances in evidence having a bearing on the question sought to be presented. The jury might have been misled into believing that only the facts specifically referred to were to be considered in determining that question.

VIII. Over defendant's objections the court permitted the State, in rebuttal, to introduce testimony that McMunn's reputation for honesty and integrity was good. The witnesses did not testify as to his reputation for truth and veracity. That ruling of the court is assigned as error. Under the decisions of this court in State v. Speritus, 191 Mo. 24, 90 S. W. 459, State v. Jones, 191 Mo. 653, 90 S. W. 465, and State v. Corrigan, 262 Mo. 195, 171 S. W. 51, the admission of that evidence was justified. In the Speritus case (a burglary and larceny case), 191 Mo. l. c. 35, the court said: "We recognize the rule that evidence is not admissible to prove the good character of a witness or a party to a suit unless it has in some way been assailed; and in the case in hand we think Vaughn's character was assailed when it was said he was a thief." Vaughn had testified for the State and the defendant had testified that Vaughn had stolen from him. The Speritus case was cited with approval in State v. Jones, supra, State v. Corrigan, supra, and State v. Richards (Mo.), 11 S. W. (2d) 1035. In the latter case, 11 S. W. (2d) l. c. 1036, it is said: "Proof that a witness has been convicted of a crime is

846

such an impeachment as warrants the introduction of evidence to sustain his character or his reputation for truth and veracity.''

In the case before us defendant introduced evidence to prove that the alleged robbery was not a real robbery, but only a pretense and that what really happened was the purloining of the money of the Jones Brothers' Exchange through the connivance and cooperation of McMunn, which would make McMunn a party to the crime. That theory was stressed by defendant in the trial. We think that accusation brings the case within the holding in State v. Speritus, supra, and other cases above cited which followed it.

Defendant makes numerous assignments of error relative to the admission of evidence and to the latitude allowed the State in cross-examining him. We find no prejudicial error in these respects. There are some other alleged errors complained of, including alleged improper and prejudicial remarks of the prosecuting attorney in his argument to the jury, which it is unnecessary to discuss, as they may not occur on another trial. In this connection, however, we again call the attention of prosecuting officers to the numerous decisions of this court wherein we have condemned vituperative or otherwise improper arguments to juries and sometimes have been compelled to reverse on that ground.

For the error noted in paragraph II hereof the judgment is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.