THE STATE v. ROOSEVELT REYNOLDS, Appellant.—131 S. W. (2d) 552.

Division Two, September 12, 1939.*

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing filed; motion overruled at September Term, September 12, 1939.

*Roy Hamlin* and *John Campbell* for appellant.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General, for respondent.

ELLISON, P: J.—The appellant was convicted of robbery in the Hannibal Court of Common Pleas, on change of venue from Ralls County, and his punishment assessed at five years' imprisonment in the penitentiary. He assigns as error that the trial court: overruled his plea of former jeopardy; denied his application for a continuance; refused to discharge the jury because of prejudicial closing argument by the prosecuting attorney; gave improper instructions; refused his instruction in the nature of a demurrer to the evidence; and failed to instruct the jury on all the law of the case.

At the trial appellant offered no evidence. The State adduced testimony showing that about midnight on February 22, 1938, the appellant entered the taxicab of Milford Menge near the Union Station in Hannibal, to be transported to New London in Ralls County, a distance of about ten miles. Before they started the cab driver picked up another passenger, William Logan, who desired to go to his home in the outskirts of Hannibal on the route to New London. Logan was delivered to his destination and the taxicab proceeded about four miles southwest of Hannibal on U. S. Highway 61, crossing the county line into Ralls County.

Appellant ordered Menge to stop. He did and turned on the dome light in the cab. Appellant had his hand in his pocket as if holding a pistol and commanded Menge to turn off the light and hold up his hands. Then from the back seat he searched Menge's pockets and took about $3 therefrom. Thereafter both men got out of the

car and a struggle ensued. Menge got a monkey wrench from the back of the car, inflicted a wound on appellant's forehead, recovered the money and returned to Hannibal, leaving appellant in the road. The police were notified. Appellant was apprehended about three hours later on U. S. Highway 36 about five miles west of Hannibal, and was positively identified by Menge, and Roy Vaughn, the service man at the taxi station where appellant engaged and entered the taxicab. The man thus apprehended had a fresh wound on his forehead. There can be no doubt about the fact that the State made a prima facie case on the merits.

■ The case came on for trial at Hannibal in July, 1938, before Hon. Edmund L. Alford, the regular judge. A jury was sworn and the prosecutor started to read the information when appellant's counsel objected because it purported to be the original filed in the Ralls County Circuit Court and was not certified by the clerk of that court. In fact, it developed that the whole transcript was uncertified. The prosecutor asked for time to procure a certified transcript and was given until 2 o'clock in the afternoon. Appellant's counsel objected, saying they had relied upon the point as a defense; that after the jury had been sworn and the defense had made objection it was too late to supply the basic papers in the case; that the ruling of the court was a surprise. They then moved that the jury and the defendant be discharged, and those motions being denied, orally asked for a continuance because of surprise from the foregoing proceedings. The Court ruled: "The motion will be denied. A continuance of the case would be tantamount to an abatement of the prosecution."

Court recessed until 2 o'clock that afternoon when the prosecutor announced that a complete certified transcript from the Ralls County Circuit Court had been filed. Thereupon appellant's counsel asked for a continuance "on two grounds, one ground of surprise in the acts of the filing of the transcript after the jury was sworn, and further . . . the defense has subpoenaed a material witness, Mr. Will Logan, who was served by the Sheriff, and through no fault of ours, and through mistake, Mr. Logan is not here but is in St. Louis today, and in view of both of these grounds the defendant asks—" a continuance. On inquiry by the court both sides conceded Logan (who, as already stated, was a passenger in the taxicab to the outskirts of Hannibal) was duly subpoenaed; that he was a material witness; that the defense had been diligent in attempting to procure his attendance; and that the facts which he would detail could not be proven by any other witness. The court inquired if appellant's counsel were asking a continuance of the cause on these grounds, and they answered "Yes." The court then made this ruling: "The application will be sustained and the cause ordered continued to the next term of this court, and the jury, with the consent of defendant, will be discharged."

The cause came on for trial again at the next term, in September

1938, before Hon. Harry J. Libby, Judge of the Second Circuit, Judge Alford having disqualified himself. Appellant interposed a plea of former jeopardy, because the jury had been sworn to try him on the same information at the preceding term, was discharged, and the cause continued. This plea being overruled, appellant saved his exceptions and now assigns error on the ruling. Under Section 23, Article II of the Constitution, and subject to the exceptions therein contained, it is a fundamental right of every person that he shall not be twice put in jeopardy for the same offense. Appellant has cited three cases announcing that familiar rule. But the right can be waived. [16 C. J., sec. 489, p. 285; 15 Am. Jur., sec. 407, p. 77; State v. Austin, 318 Mo. 859, 864, 300 S. W. 1083, 1085; State v. Miller, 331 Mo. 675, 680, 56 S. W. (2d) 92, 95.]

The statement is made in 1 Cooley on Constitutional Limitations (8 Ed.), page 690, that the rule is waived where the jury is discharged "with the consent of the defendant, express or implied." The converse is stated in 15 Am. Jur., supra, that the discharge "must have been made without the consent, express or implied, of the defendant." The record here expressly recites that the discharge of the jury in July was "with the consent of defendant." Furthermore, when a defendant asks a continuance after the jury is sworn, and the application is granted, he undoubtedly has consented to the discharge of the jury. This, we believe, is true regardless of the ground on which the continuance is requested. The very word *continuance* implies a resumption of the proceedings at a later date, not an abandonment of them. But in this case the court was careful to make it clear the continuance was granted on defendant's application because of the absence of a material witness. The assignment is ruled against appellant.

After the plea of former jeopardy and a motion to quash the information had been overruled, appellant's counsel sought a continuance because of the absence of the same witness, William Logan, who had caused the postponement of the trial in July. They stated the grounds of their application orally, with leave to file a formal written application later, which was done. Appellant's subpoena for Mr. Logan was issued in due time, eleven days before the assigned date for trial, but the sheriff did not find or serve him. He was a citizen and resident of Hannibal, but had been spending much of his time in St. Louis. In fact the statement of counsel indicates he was in Hannibal only on week-ends. So far as is shown by the oral and written applications appellant made no effort to ascertain from the sheriff whether he had obtained service of the subpoena until the case was called for trial. The court overruled the application and appellant complains of that ruling.

He cites State v. Jasper, 324 Mo. 668, 672, 24 S. W. (2d) 161, 163, where it is said: "If a party causes his witness to be subpoenaed,

and on the day of trial the witness fails to appear and the party is unable to account for the absence of such witness, the matter comes to him as a surprise." But that is very different from the situation in this case. Here the witness was *not* subpoenaed. We feel we are not putting an undue burden on litigants in saying they ought not to wait until the very minute of trial to find out whether their subpoenaes have been served. Especially is this true of witnesses who are known to be important and who are nomadic. [State v. Perkins, 342 Mo. 560, 566, 116 S. W. (2d) 80, 84.]

At the hearing on appellant's motion for new trial one of his counsel was sworn and testified that two days before the trial he inquired at the clerk's office and was informed no subpoena had been returned. The sheriff's office advised him a *non est* return had been made on the subpoena as to the witness William Logan. But these facts were not disclosed to the court at the time it overruled the application for the continuance. Even if they had been we think they would not have helped appellant's application. For they show appellant had notice two days before the trial that Logan had not yet been subpoenaed, called for greater diligence on his part, and made it incumbent on him to attempt to reach the witness in St. Louis where he spent most of his time. We cannot convict the trial court of error in its ruling.

Another assignment is levied at Instruction No. 3. It told the jury in substance that if they believed the taxicab driver, Menge, was in possession of the $3 mentioned in evidence and had custody and control thereof at the time the said $3 was taken from his person, provided they found it was so taken, such possession, if any, was sufficient ownership of the money for the purpose of the case. Appellant says the instruction assumes the existence of "the $3.00 mentioned in evidence." We do not think so. The instruction starts out with a requirement that the jury find Menge was in possession of the $3 mentioned in evidence. To find that they would have to believe the money existed as testified to. The instruction was dealing with the question of technical ownership which would satisfy the law. The next preceding instruction, No. 2, required the jury to find the appellant did take $3 from Menge's person. The jury could not have been misled. [See State v. Dockery, 243 Mo. 592, 597, 147 S. W. 976, 977.]

Instruction No. 5 was the familiar instruction on the credibility of witnesses. Among other things it told the jury they should take into consideration the character of the witness, his or *her* manner on the stand, his or *her* interest in the result of the trial, his or *her* relation to or feeling toward the defendant, the probability or improbability of his or *her* statements, etc. It happened that no female witness testified. In connection with appellant's motion for new trial one of his counsel testified that appellant's mother sat by his side

throughout the trial. Counsel did *not* testify the jury knew the woman was appellant's mother. The complaint is made that the instruction had the effect of calling the jury's attention to the fact that appellant's mother did not take the stand, and therefore was outside the issues. This contention is too far-fetched. On a kindred assignment see State v. Brown (Mo. Div. 2), 270 S. W. 275, 276(5).

The same Instruction 5 ended with these words: "In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact in the case, you are at liberty to reject and treat as untrue all, or any portion of such witness's testimony, that you may find and believe to be untrue." Our attention is directed to a criticism of the last part of this sentence, telling the jury they were at liberty to reject any portion of the witness' testimony that they believed to be untrue, made in State v. Busch, 342 Mo. 959, 968, 119 S. W. (2d) 265, 269. But that case does not hold the charge prejudicially erroneous; it merely says it is useless. We cannot reverse the case on that ground.

Instruction No. 6 was as follows: "The Court further instructs the jury that to justify the conviction of the defendant, his identity as the guilty person must be proven beyond a reasonable doubt, and if upon the evidence and the circumstances shown in evidence you entertain a reasonable doubt as to whether he is the person who entered and was in the taxicab driven by the witness Milford Menge on the evening of February 22d, 1938, or the early morning of February 23d, 1938, you will find the defendant not guilty." Error is assigned on the ground that the instruction assumed: (1) a crime had been committed; (2) that someone entered and was in the taxicab; (3) and that the taxicab was driven by Menge at the time of the robbery.

Granting that is true, was it prejudicial error. Appellant introduced no testimony and at the close of the State's case announced he stood on a demurrer. But when counsel orally presented his application for a continuance on account of the absence of the witness Logan, he told the court: "There were three people in this taxicab, Mr. Will Logan, the prosecuting witness, a man by the name of Milford Menge, and some third party, and the question in the case will be a question of identification, that's the main thing in the case." Again in his written application for continuance, one of his counsel formally alleged that the witness Logan "was in the taxicab on the night of said occurrence when defendant was supposed to have been in said taxicab with the prosecuting witness, Milford Menge;" and that the witness if present would testify the appellant was not the third party in the cab. At the trial the fact of the robbery was clearly proven and undisputed.

Further, in the development of the State's case it was shown that the appellant, when arrested, explained the wound on his forehead

by saying he fell from a freight train, and that he was trying to get to Monroe City. On cross-examination of some of the arresting officers, appellant's counsel brought out that the place five miles west of Hannibal on Highway 36 where appellant was arrested was within 200 feet of the Burlington railroad tracks; that he said he got the cut on his forehead by trying to catch a train to Monroe City which was going too fast; and that he denied being on Highway 61 (where the robbery occurred) that night.

Unquestionably it is error for an instruction to assume the existence of a material fact not proven, or disputed, but there are numerous cases holding it is not reversible error to assume the existence of a fact which has been clearly proven and is undisputed. Thus, where the sole defense on the merits is an alibi, a case will not be reversed because an instruction assumes the robbery was committed by somebody. [State v. Moore (Div. 2), 80 S. W. (2d) 128, 131 (6) ; State v. Carr (Mo. Div. 2), 256 S. W. 1043, 1047 (13).] While appellant's statements at the time of his arrest, that he was not present at the time and place of the commission of the crime, may have been self-serving they were developed by counsel for both the State and defense and tended to establish an alibi. In other words they raised a question as to the identity of the robber, and that was the only defense, aside from asserted procedural errors. We therefore conclude the giving of Instruction No. 6, above, was not error. This disposes also of appellant's next assignment that Instruction No. 7 on alibi should not have been given because there was no evidence of an alibi.

Next, error is assigned because the State failed to instruct on all the law of the case, namely on the lesser offenses of petit larceny and larceny from the person. [State v. Craft, 338 Mo. 831, 843, 92 S. W. (2d) 626, 632, is cited on this point.] That decision says larceny is included within a charge of robbery, and that where there is evidence of a larcenous taking of property but the element of force is wanting, an instruction should be given on petit larceny. There was some evidence that the taking was not forcible in that case. Appellant's theory here is that the jury may not have believed Menge's whole story that appellant used force in taking the $3 from him. We cannot agree that the record will support such an inference. In Menge's testimony the fact of force is so interwoven with the taking that the jury could not have believed the one without crediting the other. And there is nothing to the contrary in the whole record. In asking for a continuance appellant's counsel tacitly conceded a robbery had occurred and the evidence disclosed that appellant had a fresh wound on his forehead, showing force, for which he accounted only on a theory exculpating him altogether. This being true, appellant was not entitled to instructions on larceny. [State v. Whitley, 327 Mo. 226, 230, 36 S. W. (2d) 937, 938 (5).]

The last assignment complains of prejudicial closing argu-

ment by the prosecuting attorney. He said: "Why, there is only one side to it. Is there anybody, any living soul told you that Roosevelt Reynolds (the appellant) did not enter that cab that night." Appellant says this was a plain reference to the fact that he had not testified in the case, since there was no other eyewitness to the robbery except Menge, who did testify; and that appellant's rights under Section 23, Article II of the Constitution were therefore violated.

But note that the prosecutor did not say there had been no testimony that appellant did not commit the robbery. What he said was that no one had testified appellant did not *enter the taxicab* that night. And on that point Menge had testified Mr. Logan was in the taxicab, and also that he stopped at a D-X filling station on the way out of town to have the engine oil checked. Appellant's counsel stated to the court in his oral application for a continuance that he had had a subpoena issued for Otha Lawson, filling station operator, among others. The jury may not have known that, but they heard Menge's testimony and knew Mr. Logan probably would be able to identify the appellant if they were fellow passengers, and that the filling station attendant might have knowledge on that point.

Appellant stresses State v. Shuls, 329 Mo. 245, 252, 44 S. W. (2d) 94, 96(9), and State v. Snyder, 182 Mo. 462, 523, 82 S. W. 12, 31. In the former the State's attorney argued: "Who were there at the hold-up, gentlemen of the jury? There were three parties there and these two girls were the only ones that testified. . . ." In the latter a bribery charge was involved, and the circuit attorney after some preliminary remarks to the effect that the bribery transaction had taken place with only the defendant and the recipient present, said: "I believe what he (the recipient) said was the truth *and it has not been denied!*" (Italics the court's.) Then followed a coloquy between counsel and the court in which express reference was made by the court to the fact that the defendant had not testified. All this was held error, both the circuit attorney's remarks and the subsequent aggravation of them.

But on authority of State v. McKeever, 339 Mo. 1066, 1085, 101 S. W. (2d) 22, 32, we have concluded the remarks do not call for a reversal. At the same time we do not condone the practice of making any sort of reference to the fact that the defendant did not testify. If prosecutors will skate on thin ice they should expect reversals whenever the mandate of the constitution requires it. But on the other hand, as pointed out in the McKeever case, a prosecutor has the right and duty to present the strength of the State's case and the weakness of the defense. A defendant cannot tie the hands of the prosecutor merely by putting on no evidence at all. The remarks here referred to a matter about which two persons might have known beside Menge and the appellant. They were not a direct reference to the failure of the appellant to testify.

Finding no reversible error, the judgment is affirmed. All concur.