Wiley J. HUBBARD et al., Appellants,

v.

GRAY TOOL COMPANY et al., Appellees.

No. 3498.

Court of Civil Appeals of Texas.

Waco.

Nov. 21, 1957.

Rehearing Denied Dec. 12, 1957.

Helm, Jones, McDermott & Pletcher and Albert P. Jones, Mabel G. Howell and Shirley M. Helm, Houston, Duckett & Duckett, El Campo, for appellants.

Lewright, Dyer & Redford and J. M. Burnett, Corpus Christi, William S. Fly, Victoria, for appellees.

McDONALD, Chief Justice.

Plaintiff Hubbard filed this suit to recover damages for personal injuries against Gray Tool Company and Spears Well Service Company. Plaintiff was injured while in the course of employment for Belgam Oil Company at the site of their No. 3 well in Jackson County. Belgam Oil Company desired to dual complete this well and to do so engaged the services of Spears Well Service Company, which was engaged in the business of working over oil and gas wells. To dual complete this well Belgam Oil Company procured a piece of equipment known as a *"flange"* from defendant Gray Tool Company. This flange had been improperly assembled and $\frac{7}{8}$ inch studs had been placed in one inch holes. When the flange was delivered to the well site it was turned over to the Spears Well Service crew for use in the operation of bringing about the dual completion. The *"flange"* was attached to a *"Christmas tree"* and this assembly was set in position and fastened to the casing by the workover crew of Spears Well Service Company. After this crew had left for the day, a leak in the flange was discovered by plaintiff and another Belgam employee. They undertook to tighten the flange by the use of wrenches. As they were thus engaged, the Christmas tree blew off and the flange parted at the place where the studs were screwed into its bottom part. Plaintiff received severe bodily injuries as a result of this occurrence. Trial was to a jury.

At the conclusion of plaintiff's evidence defendant Spears Well Service made a motion for directed verdict. (Defendant Gray Tool Company likewise made a motion for directed verdict which was not opposed by plaintiff, plaintiff having settled with defendant Gray Tool Company for $20,000.) Defendant Spears Well Service Company's motion for directed verdict was granted by the Trial Court, which likewise rendered judgment that plaintiff take nothing. Plaintiff and defendant Gray Tool Company appealed; however, defendant Gray Tool Company has since withdrawn its appeal.

Plaintiff contends that the Trial Court erred in directing verdict in favor of defendant Spears Well Service Company, because the evidence raised issues of fact with respect to the negligence of Spears' crew, which proximately caused injuries received by plaintiff.

Plaintiff charged negligence on the part of defendant Spears Well Service:

1) In failing to make proper inspection of the flange.

2) In failing to discover the fact that studs which were $7/8$'s inch in diameter had been placed in holes in the flange which were cut for studs one inch in diameter.

3) In assembling the flange in such manner that it would not withstand pressure normally incident to the bringing in of an oil well.

4) In failing to warn plaintiff of the defect in the installation.

5) In failing to warn plaintiff of the defect in the flange, which they could have discovered in the exercise of ordinary care.

6) In representing to plaintiff's employer that the flange had been assembled properly and was safe for use.

7) In failing to assemble the flange and Christmas tree properly.

In this case we are confronted with a situation substantially thus: Plaintiff's employer hired defendant Spears Well Service to rework one of its oil wells. To rework same a piece of equipment known as a flange was required. Plaintiff's employer purchased this piece of equipment from its manufacturer, defendant Gray Tool Company. This flange was assembled with $7/8$ *inch* studs inserted into *one inch holes*. Defendant Spears Well Service installed the flange onto the well. The pressure from the well caused the defective flange to give way at the point where it was assembled with the $7/8$ inch studs inserted into one inch holes. When the flange gave way under the pressure against it, plaintiff was seriously injured. Plaintiff brought this suit against both the manufacturer of the flange, and Spears Well Service, who installed it onto the well. The manufacturer of the defective flange settled the case against it for $20,000. Plaintiff continued his suit against Spears Well Service, who installed the flange. The Trial Court directed verdict for the defendant Spears Well Service and plaintiff appeals.

■ An installer or handler of a piece of equipment or machinery, manufactured by another, is under no duty to make more than a visual inspection of the manufactured article for defects, in the absence of some circumstance which a jury could reasonably believe would put a reasonably prudent man, under the same or similar circumstances, on notice that the equipment contained some latent defect. See Western Textile Products Co. of Texas v. Sidran, 153 Tex. 21, 262 S.W.2d 942, 943; Sieracki v. Seas Shipping Co., 3 Cir., 149 F.2d 98; McLean v. Goodyear Tire & Rubber Co., 5 Cir., 85 F.2d 150.

In the Sieracki case, supra [149 F.2d 101], the plaintiff was injured when a boom fell on him while loading a ship belonging to defendant. The cause of the boom falling was a shackle which contained a latent defect. Defendant had purchased the ship fully equipped from Bethlehem Steel Company. The court, in holding defendant owner not negligent, said:

"[The defendant] is not guilty of negligence, therefore, unless it failed to use due care to discover the defect in this shackle. It could not have found it by visual inspection. Doubtless it could have been discovered had the owner torn down the various pieces of apparatus on the ship and subjected them to the sound test or the x-ray test or any other test which might have disclosed the defect. We do not think that reasonable care required such effort on the part of the owner. * * * The owner purchased the ship from * * * reputable manufacturer. We do not think the buyer, under these circumstances, is required to tear down the thing bought and subject it to independent tests in order to be exercising due care. One can hardly picture the buyer of an automobile taking it to pieces and testing its various component parts to see whether it is safe for an employee to drive."

And in the McLean case, supra, the court said:

"The petition alleges that the defect was latent and not discernible by ordinary inspection."

The court held:

"It is conceded that on the facts shown plaintiff would be entitled to recover against the manufacturer of the tire. It is equally clear that an independent dealer selling the tire would not be liable."

The record before us establishes that plaintiff's injuries were caused by the defective flange, viz.: 7/8 inch studs inserted into one inch holes. The record further establishes that this defect was latent and not obvious to visual inspection of the machinery. The duty of the defendant installer, in such situation, was to either not install same, or to warn plaintiff, if they knew, *or from facts known to them should have realized, that the flange manufactured by Gray Tool Company contained*

*the hidden defect.* There is no contention that defendant installer actually knew of the latent defect, and all of the evidence is to the effect that they did not know of same. The question for determination here, therefore, is whether defendant installer should have realized from facts known to them that the flange contained the hidden defect. It is plaintiff's burden to introduce evidence to raise the foregoing issue. As noted, the Trial Court held that plaintiff's evidence did not raise such issue and entered a directed verdict against the plaintiff. Now, in testing the propriety of such instructed verdict, this court, in Mundy v. Stiles, Tex.Civ.App., 257 S.W.2d 750, 752, W/E Ref.NRE, held:

"In determining whether a Motion for an Instructed Verdict for Appellee was properly or improperly granted, *we are bound to view the facts and the inferences drawn therefrom in a light most favorable to Appellants. Further, the evidence and all legal inferences drawn therefrom must be in the most favorable light against an instructed verdict. Our courts further say that it is only where there is no evidence or where the evidence is of such a character as to be of no probative force or value, that a Trial Judge may take a case from a jury and himself decide the issues.*"

We come now to a review of the evidence adduced by the plaintiff and which plaintiff contends was sufficient in law to have raised a jury issue as to whether defendant installer should have realized that the "flange" installed by them contained the hidden defect, to wit: had 7/8 inch studs inserted into one inch holes. (If defendant knew or should have realized, of course they had the duty to either warn or to conduct further tests).

A visual inspection of the "flange" would not disclose the existence of the defect. The evidence reflects that defendant Spears' crew had to remove 24 nuts from the studs and in doing so ascertained that

it was necessary to use a smaller wrench *than would normally be used on a 600 Series flange.* It was the 7/8 inch studs in the one inch holes which caused the injury to plaintiff. Plaintiff contends that this fact was sufficient to cause defendant's crew to know that there was something unusual about this flange and that such should have flashed a danger signal to defendant's crew that something was unusual about the construction of the flange and that either a warning should have been given or some further examination of the flange made.

Now the evidence reflects that the flange was specially manufactured for this particular job by Gray Tool Company upon the special order of the Belgam Oil Company. There is *no* evidence in the record that defendant Spears Well Service or any member of their crew knew of the specifications, size, or details of the flange. There is further no evidence that Spears or their crew knew that the flange was or was supposed to be a Series 600. There is no evidence that Spears or their crew knew or should have known that the flange should have contained one inch studs. Neither is there any evidence that manufacturers of oilfield equipment use a "standard" nut on all one inch studs. In fact, the evidence establishes *only* that a smaller wrench was necessary to tighten these nuts than would be used to tighten one inch nuts. This would not be any notice that the holes into which the studs were inserted were not the caliber holes to fit the studs. Plaintiff contends that when defendant's crew removed the nuts from the studs that they could have seen that the studs did not fit securely into the holes. This is not borne out by the record. The record reflects that the flange was painted; that the 7/8 inch studs inserted into the one inch holes appeared to fit securely; that the defect is not perceptible to visual inspection. Plaintiff contends that the knowledge which came to defendant Spears' crew was sufficient to cause Spears' crew to make further examination or tests of the "unusual" flange. While we do not agree with this contention,

we note that the record reflects that after Spears installed the "flange" on the well they connected the tubing thereto and raised same some 30 feet in the air. The record reflects that the tubing raised weighed some 23,500 pounds. During this operation nothing unusual was noticeable in the flange, and it performed perfectly in supporting the tremendous weight of the tubing. The practical effect of the foregoing was to make further tests, which indicated the flange was in fact sound. The blowout occurred after Spears' crew discontinued work for the day when plaintiff and another employee noticed a leak in the flange and attempted to tighten the nuts.

■ Defendant Spears Well Service did not know the flange was defective; it was specially ordered by plaintiff's employer for this particular job; visual inspection failed to disclose its latent and hidden defect; there is no evidence to the effect that any special size or series of flange was ordered or required—only that the flange here used had been specially ordered for this job; defendant Spears' crew removed the nuts therefrom; the first wrench they attempted to use was a one inch wrench and was too large, so they used a smaller wrench; after the removal of the nuts visual inspection still failed to disclose the fact that the holes were larger than the studs; they assembled the flange; connected same to 23,500 pounds of pipe; raised the assembly 30 feet into the air; and thereafter stopped work for the day. Is there any fact, circumstance or inference in the record—viewed, as we must, in the light most favorable to plaintiff—to suggest a breach of duty on defendant Spears' part? We think not—and certainly none of such character as to be of any *"probative force or value".* See Mundy v. Stiles, supra; Continental Casualty Co. v. Fountain, Tex.Civ.App., 257 S.W.2d 338, 344, Writ Ref. The court, in the last named case, says:

> "We believe that * * * Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, lays down the rule applicable to this case: '* * * it is the duty of the

court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being "any evidence"; * * *.' See also Waco Drug Co. v. Hensley, Tex.Com.App., 34 S.W.2d 832."

From what has been said we are of the view that plaintiff's evidence, tested in the light most favorable to him, and against the directed verdict, was not sufficient to raise the jury issues contended for by plaintiff, and that the Trial Court did not err in directing the verdict for the defendant.

The judgment of the Trial Court is therefore affirmed.