**Edward G. ROSSOMANNO, Appellant,**

v.

**LACLEDE CAB COMPANY, a Corporation, Respondent.**

No. 47001.

Supreme Court of Missouri,

En Banc.

Nov. 9, 1959.

Charles E. Gray, Cleo V. Barnhart and Barnhart & Sommers, St. Louis, Attorneys for Plaintiff-Appellant.

John T. Murphy, Jr., and Carl R. Gaertner and Murphy & Gaertner, St. Louis, Attorneys for Defendant-Respondent.

STORCKMAN, Presiding Judge.

This is a personal injury action in which a jury found for the plaintiff and assessed his damages at $1,500. Plaintiff's motion for "a new trial on the measure of damages" was overruled and he has appealed.

The accident happened during the nighttime on December 2, 1956, while plaintiff was delivering newspapers, a part-time employment in which he engaged to supplement his income as a mail carrier for the United States Post Office Department. Plaintiff was seated in his automobile, stopped on Delmar Boulevard in St. Louis headed east, when it was struck from the rear by a taxicab operated by the defendant company. The defendant disputed liability on the theory that the collision was the result of a sudden emergency created by a westbound automobile swerving into the pathway of the eastbound taxicab. However, the controversy over damages took up most of the trial time. The defendant contended the impact of the collision was not as great as the plaintiff contended, that plaintiff's injuries were not serious or disabling and were at-

tributable in part at least to a previous accident in which plaintiff was involved on June 11, 1951.

Although inadequacy of the verdict is not presented as such the appellant, consistent with his limited motion for new trial, concludes his brief with the assertion that "this Court should therefore reverse and remand this case for a new trial on the measure of damages." This case is unlike Ashbrook v. Willis, 338 Mo. 226, 89 S.W.2d 659, in which the trial court had granted plaintiff a new trial and the issue on appeal was made by defendant-appellant's contention that his $500 judgment against the plaintiff should be reinstated. In this case the amount in dispute for purposes of appellate jurisdiction is the difference between the amount of damages prayed for and the amount of the judgment rendered in the trial court. Glore v. Bone, Mo., 324 S.W.2d 633; Combs v. Combs, Mo., 284 S.W.2d 423, 424[1]; Vogrin v. Forum Cafeterias of America, Inc., Mo.App., 301 S.W.2d 406, 409[4], and Mo., 308 S.W.2d 617. The amount prayed for was $27,500 and the amount recovered was $1,500; hence this court has jurisdiction.

At the instance of the defendant the court gave Instruction No. 7 on the credibility of witnesses, the second paragraph of which reads as follows: "In this connection you are further instructed that, if you believe that any witness has knowingly sworn falsely to any fact or facts material to the issues in this case, then you *may* disregard such portion of the testimony as you believe to be false, if any, and you are at liberty to reject or disregard all other portions of such witness' testimony."

The plaintiff alleges that the use of the word "may" (italicized in the instruction) "was clearly a misdirection of law in that it left it up to the jury as to whether or not they would disregard testimony which they believed to be false." The plaintiff says that the jury should have been instructed that it "must" disregard such portion of the testimony as it believed to be false and relies

in part upon Tyler v. Lindell Trust Co., Mo. App., 285 S.W.2d 16, 20, which holds that the appellant in that case could not have been prejudiced by an instruction which told the jury that "you *must* disregard such portion of the testimony as you believe to be false, if any, and you are at liberty to reject all other portion of such witness' testimony." Plaintiff also cites State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492, 494, in which an instruction advising the jury that "you *should* reject all or any portion of such witness' testimony" was held to be erroneous because it invaded the province of the jury. The opinion then states: "Such instructions should inform the jury in substance that if any witness has wilfully and knowingly sworn falsely as to any material fact in issue it should disregard such false testimony and *may* reject any or all such witness' testimony." Emphasis added.

It should be kept in mind that the giving of an instruction on the credibility of witnesses and more particularly on false testimony is largely within the discretion of the trial court. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247[8]; State v. Hardin, 324 Mo. 28, 21 S.W.2d 758, 761[6, 7]. Presumably the determination of when a witness is lying and knowing what to do about it when he does is a function which a juror can ordinarily perform without any particular direction.

A so-called falsus in uno, falsus in omnibus instruction which merely authorizes the jurors to disregard testimony which they believe to be false are useless declarations of the obvious, but they are not prejudicially erroneous. State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, 1052[12]; Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353, 360[12]; Flint v. Loew's St. Louis Realty & Amusement Corp., 344 Mo. 310, 126 S.W.2d 193, 197[10]; Eisenbarth v. Powell Bros. Truck Lines, 235 Mo.App. 442, 125 S.W.2d 899, 901–902[2], and on certiorari, State ex rel. Powell Bros. Truck Lines v. Hostetter, 345 Mo. 915, 137 S.W.2d 461; State v. Reynolds, 345 Mo. 79, 131 S.W.2d 552, 556[8]; State v. Busch, 342 Mo. 959, 119 S.W.2d 265, 269[9]. In the Willard case the court stated, 142 S.W.2d loc. cit. 1052 [12]: "The main purpose of such instructions is to guide the jury in applying the rule of evidence expressed in the maxim Falsus in uno, falsus in omnibus. Instructions which merely authorize them to reject testimony they think is false, do not come under the maxim and are useless declarations of the obvious, but not prejudicially erroneous." The other cases discussing the legal effect of this permissive sort of language are of the same purport.

The first paragraph of the instruction properly advised the jury that "you are the sole judge of the credibility of the witnesses and the weight to be given to their testimony." State v. Hart, 331 Mo. 650, 56 S.W.2d 592, 594[6]; Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S.W.2d 749, 755–756[9]. Other instructions in the case also tended to advise the jury that it had the province of determining what evidence was believable or credible.

The word "may" is not as compelling as "must" or as obligatory as "should", but it is not preclusive of them. Kippenbrock v. Wabash Railroad Co., 270 Mo. 479, 194 S.W. 50, 52[6]; Thompson v. Quincy, O. & K. C. R. Co., Mo., 18 S.W.2d 401, 405[9]; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 308[5]. This instruction and the others do not prohibit the jury from disregarding entirely testimony not deemed worthy of belief but plainly indicates that it should. In these circumstances the instruction is not a misdirection to the jury but at most a nondirection which is not reversible error. Rose v. Missouri Dist. Telegraph Co., 328 Mo. 1009, 43 S.W.2d 562, 570[23], 81 A.L.R. 400; State ex rel. Rothenheber v. Allen, 307 Mo. 480, 270 S.W. 633, 634[2]. The jury found for the plaintiff and we cannot believe that a jury discerning enough to "judge the credibility of witnesses and the weight to be given to their evidence" with respect to liability would stray so far as to forget their standards and duty in evaluating the evi-

dence as to damages. Hence it does not appear that the giving of Instruction No. 7 constituted an error materially affecting the merits of the action. Section 512.160 RSMo 1949, V.A.M.S.

The plaintiff further assigns error in the admission in evidence of defendant's Exhibit F, an office record of Dr. Vilray P. Blair, Jr., dated November 22, 1952, pertaining to Dr. Blair's examination and treatment of the plaintiff. The plaintiff had testified that he did not remember exactly when he went to see Dr. Blair; that it was probably four, five or six months, but not as much as a year subsequent to June 1951.

The plaintiff contends that Exhibit F was hearsay and was not sufficiently qualified to justify its admission as evidence under the Business Records as Evidence Law, §§ 490.660–490.690. Celia Brody, an employee of Dr. Blair, produced the record and testified that she was familiar with the way the records were kept in Dr. Blair's office; that Exhibit F was kept in the regular course of business in the operation of Dr. Blair's office; that she recognized Dr. Blair's handwriting on the record card; that the events recorded were entered at or about the time they took place just like any other business record; that the records in the doctor's office are kept in the ordinary course of business by recording the event they reflect at or about the time it took place. On cross-examination the witness testified that she had worked for Dr. Blair for one month and was not so employed on the date of the record; that she had no personal knowledge as to how the records were kept or in what manner they were made up in 1951 and 1952; that she recognized the doctor's handwriting on the card but did not know of her own knowledge who wrote the remainder of it but had been told that it was the doctor's nurse; that she did not know of her own knowledge under what circumstances it was written; that the exhibit contained two kinds of handwriting and also typewriting; and that Dr. Blair was then in his office.

Section 490.680 provides that the record of an act, condition or event, shall be competent, insofar as relevant, (1) if the custodian or other qualified witness testifies to its identity and the mode of its preparation; and (2) if the record was made in the regular course of business, at or near the time of the act, condition or event; and (3) if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

■ ■ The Business Records as Evidence Law abrogated many of the antiquated and technical common law rules regarding the admission of business records in evidence and expanded the operation of the common law rule for the admission of such records as an exception to the hearsay rule. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, 669 [11, 13]. Therefore, an objection to a business record on the ground that it is hearsay is unavailing if the record meets the requirements of the act for admission in evidence. Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 667[7], 55 A.L. R.2d 1022.

■ The professional records of doctors of medicine are within the purview of the Business Records as Evidence Law and upon proper identification and qualification are admissible in evidence. Fisher v. Gunn, Mo., 270 S.W.2d 869; York v. Daniels, 241 Mo.App. 809, 259 S.W.2d 109.

■ In arguing against the admissibility of the record, the plaintiff contends that since Dr. Blair was in St. Louis he should have been called to testify with respect to the exhibit. Even though he was available, the testimony of the doctor was not necessary to render the record admissible in evidence. Ellis v. State Dept. of Public Health and Welfare, 365 Mo. 614, 285 S.W. 2d 634, 641[18]. Moreover, it is inconceivable that a busy medical practitioner would have an independent recollection of

each entry made in his business records and be able to testify from personal recollection as to when and by whom all entries were made. The law recognizes that records made and relied upon in the regular course of business may be regarded as trustworthy without verification of all persons who contributed to them.

■ The plaintiff insists that the witness Celia Brody did no more than identify Exhibit F as one of Dr. Blair's business records and that she was not qualified to testify to the "mode of its preparation." His contention essentially is that the witness, by reason of having been employed in Dr. Blair's office only one month, did not know *of her own knowledge* when or how the record came into existence, who had typed or written on the card other than Dr. Blair, where the information on the card came from and whether Dr. Blair's office records were kept the same in 1952 as they were in 1958. If plaintiff's position is correct, a new employee, even a permanent custodian, would be incompetent to qualify for admission in evidence any records ante-dating his employment regardless of how many years he continued to work because he could never acquire the necessary personal knowledge.

■ In Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 666, this court, speaking of the Business Records as Evidence Law, stated: "We have determined that this qualification was sufficient, and we so hold. To require more would, as a practical matter, seem to enforce the attendance and testimony of the various persons who co-operated in making the record, which is the very thing the Act seeks to obviate. 6 Wigmore on Evidence, 3d Ed., § 1707; and a reasonable liberality seems to be imposed by the very wording of § 490.690. To construe the act too strictly would be to repeal it." Two sets of records were involved in the Allen case. One was an insurance company's file which was identified by an adjuster who did not know of his own knowledge when the entries were made and had not worked on the claim personally. The record was held to have been properly admitted in evidence and the court commented that the adjuster-witness was at least the temporary custodian and was a qualified witness. 285 S.W. 2d 669. See also Fisher v. Gunn, Mo., 270 S.W.2d 869, 878[10]. With reference to the Uniform Business Records as Evidence Act, 20 Am.Jur.Evidence, § 1043, Pocket Parts, states: "As to the verification and authentication of the type of records covered by the statute, the courts require but slight, if any, further evidence in support of the documents offered than the presumption of regularity that arises from a showing of their source."[1] Also see: 21 A.L.R.2d 777–784.

1. Although we need not decide the question and do not do so, an interesting inquiry suggests itself which is whether the courts might properly take judicial notice that doctors of medicine in modern times at least, "in the regular course of business", have kept records of their patients' cases and have made entries in them at or near the time of the occurrence of the event chronicled. See 31 C.J.S. Evidence § 30, p. 574; Missouri Digest, Evidence, ☞21. The courts have judicially noticed many practices in the medical field, some apparently less common than record keeping, such as: People generally have needs for medical attention, Thornsberry v. State Dept. of Public Health and Welfare, Mo.App., 285 S.W.2d 77, reversed 365 Mo. 1217, 295 S.W.2d 372; the way a layman usually determines he has a disease affecting an internal organ is to be so advised by a physician, Baugh v. Life & Casualty Ins. Co. of Tenn., Mo., 307 S.W.2d 660; X-ray photographs are ordinarily used as an aid to diagnosis in fracture cases, Reynolds v. Struble, 128 Cal.App. 716, 18 P.2d 690; it is customary to administer a local or general anesthetic in case of a surgical operation of any magnitude, International Travelers' Ass'n v. Yates, Tex.Com.App., 29 S.W.2d 980; treatment of a leg fracture by encasing it in a cast is a method generally used, Lewis v. Johnson, 12 Cal.2d 558, 86 P.2d 99; hospital bills rendered include such items as medicine, food and care, Karagas v. Union Pac. R. Co., Mo.App., 232 S.W. 1100; physicians frequently maintain their offices in their residences, State ex

We cannot escape the conclusion that a witness may be competent to identify a business record and testify to the mode of its preparation even though he was not employed in the "business" at the time the act, condition or event occurred or was recorded. The testimony of the witness as to the "mode of preparation" need not be based on personal knowledge. This is in keeping with the last clause of section 490.680 which provides that the record shall be competent "if, in the opinion of the court, *the sources of information,* method and time of preparation were such as to justify its admission." Emphasis added. As stated in Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 666, 55 A.L.R.2d 1022: "There must, of course, be a preliminary showing of the identity of the record, the mode and time, (or times) of its preparation, and that it was made in the regular course of business; if this, and the 'sources of information,' are sufficient 'in the opinion of the court,' then the record, generally, is admissible."

We cannot say as a matter of law that the testimony of the witness should be wholly disregarded because she had been in Dr. Blair's employment for only a month. The trial court must of necessity be given a large discretion in his determination of whether the statutory requirements for admission of the business records have been satisfactorily complied with. Fisher v. Gunn, Mo., 270 S.W.2d 869, 879[12]; Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, 671[19]; Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 667, 55 A.L.R.2d 1022.

In addition to the testimony of Miss Brody, the record shows that the plaintiff himself testified that he had been treated by Dr. Blair sometime after the accident which occurred in June 1951. Further, the condition and appearance of the record itself might have some bearing upon the opinion of the court as to the justification for admitting it as an exhibit. The record was read into evidence but the exhibit itself is not before us. The plaintiff himself introduced in evidence the records of two hospitals and the file of an insurance company. While the defendant did not object, it is significant that the plaintiff did not attempt to qualify his identifying witnesses according to the standards he seeks to impose on the defendant; for instance, the only qualification shown by the witness who produced the insurance company's file was that he was "connected with" the insurance company. On the whole record we are convinced that the trial court did not abuse its discretion in admitting Exhibit F into evidence.

Accordingly the judgment is affirmed.

Adopted as the opinion of the Court En Banc.

## On Hearing En Banc

PER CURIAM.

The appellant contends that our Divisional opinion conflicts with Lockhart v. St. Louis Public Service Co., Mo., 318 S.W.2d 177, with reference to the qualification of business records for admission in evidence. In the Lockhart case the attack appears to have been more upon the sufficiency of

rel. Kaegel v. Holekamp, Mo.App., 151 S. W.2d 685; progress has been made in movements which have been on foot for several years to raise the standards of attainment of practitioners of both law and medicine, Horton v. Clark, 316 Mo. 770, 293 S.W. 362. Courts are not required to profess ignorance of matters known to the general public, Elder v. Delcour, 364 Mo. 835, 269 S.W.2d 17, 47 A.L.R.2d 370.

A matter judicially noticed is the equivalent of evidence of the fact noticed, but where it is of a nature susceptible of dispute, evidence may be offered to rebut it. Zickefoose v. Thompson, 347 Mo. 579, 148 S.W.2d 784; Timson v. Manufacturers' Coal & Coke Co., 220 Mo. 580, 119 S.W. 565; Brock v. American Central Life Ins. Co., Mo.App., 44 S.W. 2d 200.

the proof to satisfy the requirements of the Uniform Business Records as Evidence Law than upon the competency of the identifying witness to furnish such proof. However, to the extent that a conflict exists as to the intent of the Law and the qualification of records under it, the Lockhart case is overruled and should no longer be followed.