Hazel Dean CAYLOR et vir, Appellants,

v.

TEXAS STATE OPTICAL COMPANY, Appellee.

No. 3909.

Court of Civil Appeals of Texas.

Waco.

Nov. 2, 1961.

Rehearing Denied Nov. 30, 1961.

W. G. Walley, Jr., Beaumont, for appellant.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellee.

McDONALD, Chief Justice.

This is an appeal from an instructed verdict in favor of the defendant.

Plaintiff, as administratrix of the estate of her deceased son, Dr. Roy L. Baker, filed this suit against Dr. S. J. Rogers and Dr. N. J. Rogers, doing business as Texas State Optical Company, seeking to recover the sum of $10,221. allegedly due her deceased son by virtue of the terms of a certain contract, wholly in the handwriting of Dr. S. J. Rogers. Plaintiff alleged that her son, Dr. Baker, was an optometrist and the owner of Kent Optical Company in Victoria, Texas; that he entered into a written contract with defendants as follows:

"Victoria, Texas
"Nov. 8, 1955

"It is hereby agreed that Drs. J. S. and N. J. Rogers will purchase the Kent Optical Co. and its contents (excepting typewriter and personal items of Dr. Roy Baker) for the sum of Ten Thousand, two hundred and twenty one dollars ($10,221.00).

"Drs. S. J. and N. Jay Rogers agree to employ Dr. Roy Baker as an optometrist in one of the Dallas offices of the Texas State Optical Co. Dr. Baker is to receive a starting salary of $8000.-00 per year, plus some bonus, an agreement to be written up within the next 5 days to cover same in detail.

"Lease arrangements on Kent Optical's location to be worked out to both both parties' satisfaction.

(S)   Dr. S. J. Rogers (S)   Roy L. Baker"

That pursuant to such agreement in writing, Dr. Baker delivered the business and property to Drs. S. J. and N. J. Rogers and they took possession of same, but that they refuse to pay the $10,221. in accordance with the contract.

That Dr. Baker was killed in an automobile accident on 21 November, 1955.

Defendants answered that the written contract sued on was merely a memorandum of preliminary negotiations looking forward to the execution of a contract in the future and was consequently not a valid contract; and in the alternative defendants plead that the primary consideration was for the personal service to be rendered by Dr. Baker, and he having died, there was no liability on the contract.

Trial was to a jury. The record reflects that Dr. Baker wanted to sell Kent Optical Company and that Dr. Baker and Dr. Rogers together, took a detailed inventory of the contents of Kent Optical Company in Victoria, Texas, to arrive at the $10,221. figure; that after the execution of the contract, Texas State Optical Company took over the business, changed the lock on the door; collected accounts due; referred patients to their other Victoria location

for examination; employed Dr. Baker's office assistant; and had the radio station change the advertising announcement from "Kent Optical Company" to "Texas State Optical Company" at two locations. Dr. Rogers testified that the contract was contingent on Dr. Baker's going to work for Texas State Optical Company; the former office assistant, Mrs. Elliott, testified that Dr. Baker was trying to establish a business in Marfa, and only desired Dr. Rogers to agree to employ him so that he would have a place, if the Marfa location fell through. Plaintiffs tendered evidence that the lease arrangement on Kent Optical location had been worked out to both parties' satisfaction, which evidence was excluded by the Trial Court. As noted, Dr. Baker was killed in an automobile accident on 21 November 1955, and thereafter defendant refused to pay the $10,221.

At the close of the plaintiff's evidence, defendants moved for an instructed verdict on the ground that the evidence conclusively demonstrated as a matter of law that the minds of the parties had never met on all of the essential terms of the proposed contract; that the contract declared upon was a memorandum constituting preliminary negotiations looking forward to the execution of a contract in the future; and that the consideration for the contract was Dr. Baker's personal services to be rendered in the future, and which he could not render due to his death.

The Trial Court granted such motion for instructed verdict and entered judgment that plaintiff take nothing.

Plaintiff appeals, contending: 1) that the Trial Court erred in instructing the jury to return a verdict for defendants; 2) that there were several fact issues for determination by the jury; 3) that the Trial Court erred in not permitting plaintiff to show by competent evidence that the lease arrangement mentioned in the 3rd paragraph of the contract had been resolved to the complete satisfaction of all the parties or their legal representatives.

The contract herein is composed of 3 paragraphs, all in Dr. Rogers' handwriting.

The 1st paragraph is an unequivocal agreement for defendants to purchase Kent Optical Company and its contents for $10,221. We see no ambiguity in this paragraph. In the 2nd paragraph defendant agrees to employ Dr. Baker for $8000. per year plus a bonus, the details of which were to be covered in a further written memorandum. Dr. Rogers testified that Dr. Baker had agreed to go to work for Texas State Optical. Mrs. Elliott, Dr. Baker's office assistant, testified that Dr. Baker was planning to open an office in Marfa, and that he just wanted to be assured of a job with Texas State Optical, if he should need it. Moreover, Dr. Rogers, in his deposition taken prior to trial, stated that Dr. Baker wanted some assurance that he would have a position with Texas State Optical. The foregoing substantiates the testimony of Mrs. Elliott.

The 3rd paragraph of the contract provided that the lease arrangements were to be worked out to the satisfaction of both parties. Plaintiffs tendered evidence that this had been done, but such evidence was excluded by the trial court.

We think that paragraph 2, supra, is ambiguous as to whether Dr. Baker agreed to go to work for Texas State Optical. The evidence as to the intention of the parties in this regard is conflicting.

In determining whether a motion for an instructed verdict was properly or improperly granted, we are bound to view the facts and the inferences drawn therefrom in a light most favorable to the party against whom the instructed verdict was granted. Further, the evidence and all legal inferences drawn therefrom must be in the most favorable light against an instructed verdict. Our courts further say that it is only where there is no evidence or where the evidence is of such a character as to be of no probative force or value, that a Trial Judge may take a case from a jury and him-

self decide the issues. Mundy v. Stiles, Tex.Civ.App., n.r.e., 257 S.W.2d 750; Duke v. Garrett, Tex.Civ.App. (n.w.h.) 263 S.W. 2d 680; Hubbard v. Gray Tool Co., Tex. Civ.App. (n.r.e.) 307 S.W.2d 599. See also: Burt v. Lochausen, 151 Tex. 289, 249 S.W. 2d 194; Olds v. Traylor, Tex.Civ.App., W/E Ref., 180 S.W.2d 511.

We think that a fact issue was tendered as to whether Dr. Baker was to go to work for Texas State Optical, and that the instructed verdict for defendant was improper.

Further, upon another trial, tendered evidence as to the satisfaction of the parties to the lease arrangements, if properly proved up, should be admitted.

Reversed and remanded.