**ASSOCIATED WHOLESALE GROCERS, Appellant,**

v.

**Samuel Lewis MONCRIEF and Division of Employment Security, Respondents.**

**No. 22096.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 14, 1998.

Gail Shrager, Jay M. Dade, Husch & Eppenberger, Kansas City, for Appellant.

Marilyn Green, Cynthia Quetsch, Jefferson City, for Division of Employment Security.

SHRUM, Judge.

Associated Wholesale Grocers (Employer) appeals from a decision of the Labor and Industrial Relations Commission (Commission) awarding unemployment compensation benefits to Samuel Lewis Moncrief (Claimant). The issue is whether Commission erred when it ruled that one page of an exhibit was hearsay and, based on that finding, concluded that there was not competent and substantial evidence in the record to support Employer's claim that Claimant's drug test was confirmed positive for marijuana.[1] We reverse and remand for reconsideration.

## FACTS

Claimant worked for Employer as a truck driver. He was selected for a random drug test conducted pursuant to U.S. Department of Transportation (DOT) guidelines. Claimant provided a urine specimen for analysis by SmithKline Beecham Laboratories in Schaumburg, Illinois. When Employer learned that Claimant's drug test was positive for marijuana, it ended Claimant's employment on August 2, 1996.

Claimant applied for unemployment compensation benefits. In March 1997, Commission affirmed an appeals tribunal's award of benefits. However, that award was reversed by this court in *Moncrief I. See* note 1. The procedural background provided in *Moncrief I* will not be repeated here.

Upon remand, Commission again found that Claimant was "not disqualified for benefits as a result of his discharge on August 2, 1996." Commission's conclusions of law included:

> "Employer's exhibit No. 1, p. 6, is not a business record of employer. It is a business record of SmithKline and Beecham Laboratories. The document does not meet the requirements of [8 CSR 10–5.015(11)(B)(5) (July 30, 1997)] and is not admissible on that basis."

Next, Commission noted that the appeals referee admitted page six of Exhibit 1 at the hearing but, in a post-hearing ruling, reversed himself and refused to admit the record, saying it was hearsay. Commission concluded that such post-hearing exclusion of the document violated Employee's right to a "fair hearing[,]" citing *Philadelphia Electric v. Unemployment Comp. Bd. of Review,* 129 Pa.Cmwlth. 417, 565 A.2d 1246 (1989). Accordingly, Commission admitted the questioned document via the *"Philadelphia Electric* rationale" but not as a business record. Commission's order continued:

---

1. Initially the Commission excluded the same evidence because "[i]t did not contain an affidavit from the custodian of records from the laboratory." In *Associated Wholesale Grocers v. Moncrief,* 955 S.W.2d 37 (Mo.App.1997) (*Moncrief I*), this court held that the Commission had erroneously interpreted the law because the procedure to be followed in appeals hearings with respect to the admissibility of business records is governed by § 8 CSR 10–5.015(11)(B)(5). Under that regulation, an affidavit from the custodian of records is not required. *Id.* at 39.

"The next issue [is] whether employer's evidence is sufficient to prove misconduct. Employer's only evidence that claimant used marijuana was a hearsay statement (the laboratory report). Claimant testified at the hearing that he did not use marijuana. The appeals referee made no finding that claimant's testimony was not credible. These facts are almost identical to those in *Wilson v. Labor and Industrial Relations Commission,* 573 S.W.2d 118 (Mo.App. 1978).

. . . .

"The principle in *Wilson* applies here. In both cases, employer's only evidence of wrongdoing was hearsay which was admitted into evidence. (We are admitting the laboratory report into evidence based on the *Philadelphia Electric,* rationale). In both cases, the claimant testified live at the hearing contrary to the hearsay evidence. There was no finding in either case that claimant's testimony was not credible. Applying the *Wilson* principles here by weighing employer's hearsay evidence versus claimant's live testimony, we find employer's hearsay is insufficient to support a finding that the claimant was discharged for misconduct."

The sixth page of Exhibit 1 is captioned "FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM."[2] Claimant's objection at the hearing concerned only the portion of the document denominated "STEP 8: PORTION TO BE COMPLETED BY THE MEDICAL REVIEW OFFICER."[3]

In "STEP 8," L.D. Atkinson, M.D., reported that he had reviewed the laboratory tests for Claimant's specimen "in accordance with applicable Federal requirements" and from such review, had concluded that the test was positive for "marijuana."

Dr. Atkinson is associated with General Medical Center, a business located in Springfield, Missouri. He is also retained as Employer's Medical Review Officer (MRO).[4] In that capacity, Dr. Atkinson does the obligatory final review of confirmed positive test results as part of Employer's random drug-testing program. Employer also retains General Medical Center as its collection laboratory for drug tests.[5] Specifically, General Medical Center obtains an employee's urine specimen and forwards it to SmithKline Beecham Laboratories for testing.

Accordingly, when Claimant's name came up for drug testing on July 26, 1996, he was sent to General Medical Center where he submitted a urine specimen. The sixth page of Exhibit 1 contains procedural STEPS 1, 2, 4, 5, 6, and 8. Pursuant to instructions on the form, all STEPS on this form were completed, either by Claimant, Dr. Atkinson, or "collection site" personnel.[6]

## DISCUSSION AND DECISION

On appeal, Employer's first point maintains that Commission erroneously interpreted the law in deciding that the sixth page of Exhibit 1 was inadmissible as a business record because it was SmithKline Beecham's

---

2. 49 C.F.R. § 40, Appendix A (1997) contains an eight-page Drug Testing Custody and Control Form that must be used as part of the testing procedure. The document in question, page six of Exhibit 1, is a completed version of "Copy 4" of the prescribed form. The following instruction appears at the bottom of Copy 4: "SEND DIRECTLY TO MEDICAL OFFICER—DO NOT SEND TO LABORATORY."

3. The fifth page of Exhibit 1 (received in evidence without objection) is the same as the sixth except for STEP 8. STEP 8 is completed on page six but not on five. The rest of each page is identical and contains (1) information about Claimant and the "Collector," (2) Claimant's certification that he gave a specimen of his urine to the "Collector," (3) "Collector's" certification that it received Claimant's specimen, and (4) a chain of custody record for the specimen.

4. 49 C.F.R. § 40.3 (1997) defines "Medical Review Officer" as "[a] licensed physician (medical doctor or doctor of osteopathy) responsible for receiving laboratory results generated by an employer's drug testing program who has knowledge of substance abuse disorders and has appropriate medical training to interpret and evaluate an individual's confirmed positive test result together with his or her medical history and any other relevant biomedical information."

5. *See* 49 C.F.R. § 40.3 (1997) for definition of "Collection site."

6. *See* 49 C.F.R. § 40.3 (1997) for definition of a "Collection site person."

business record, not that of Employer. Employer insists that this error led to another misapplication of the law, specifically, Commission's conclusion that this document (which contains Dr. Atkinson's report) was hearsay and could not qualify as competent and substantial evidence.

We find that Commission erred when it ruled that the sixth page of Exhibit 1 was inadmissible as a business document. Consequently, we agree that Commission erroneously applied the reasoning of *Wilson v. Labor and Indus. Rel. Comm'n* to this case.

Most of the antiquated and technical common law rules regarding the admission of business records in evidence have been abrogated by statutes or regulations. *See Rossomanno v. Laclede Cab Co.*, 328 S.W.2d 677, 681[7] (Mo.banc 1959). Accordingly, an objection to a business record on the ground that it is hearsay is unavailing if the record meets the requirement of the act for admission in evidence. *Id.* at 681[8]. Provisions governing admission of business records are to be liberally construed. *See Sigrist v. Clarke*, 935 S.W.2d 350, 353[1] (Mo.App. 1996).

Under Commission's own regulations, hearings by an administrative law judge need *not* be "conducted according to the common law or statutory rules of evidence...." 8 CSR § 10–5.015(11)(B)(4) (July 30, 1997). While "[i]rrelevant, immaterial, privileged or unduly repetitious evidence shall be excluded ... all other evidence of a type commonly relied upon by reasonable persons in the conduct of their affairs shall be admissible, whether or not that evidence would be admissible in a trial in the courts of Missouri." *Id.*

Regarding "business records," Commission has adopted 8 CSR § 10–5.015(11)(B)(5) (July 30, 1997), which in pertinent part provides:

> "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of an act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if it shall appear that it was made in the regular course of any business and that it was the regular course of the business to make the memorandum or record at the time of the act, transaction, occurrence or event or within a reasonable time after that."

Here, Commission's conclusion that the sixth page of Exhibit 1 was inadmissible as a business record disregards the plain language of 8 CSR § 10–5.015(11)(B)(5) (July 30, 1997) and the dictates of 8 CSR § 10–5.015(11)(B)(4) (July 30, 1997). Under these regulations, only three inquiries are relevant when considering if the record of Dr. Atkinson's review of the SmithKline Beecham Laboratories' result is admissible. First, was the record made in the regular course of a business? Second, was it part of the regular course of the business that the medical review officer make this record at the time of his review or within a reasonable time after that? Third, was the record a type of evidence "commonly relied upon by reasonable persons in the conduct of their affairs?" If the answer to each question is "yes," then the record is admissible.

Clearly, the sixth page of Exhibit 1 is a record of that part of the drug testing procedure for Claimant that was conducted at General Medical Center. This record, when read with DOT regulations, reveals that Dr. Atkinson's review of Claimant's positive drug test and his report thereon were an integral part of the mandatory drug testing procedure prescribed by the DOT. For example, 49 C.F.R. § 40.33(a)(1) (1997) reads:

> "An essential part of the drug testing program is the final review of confirmed positive results from the laboratory. A positive test result does not automatically identify an employee ... as having used drugs in violation of a DOT agency regulation. An individual with a detailed knowledge of possible alternative medical explanations is essential to the review of results. This review shall be performed by the Medical Review Officer (MRO) prior to the transmission of the results to employer administrative officials. The MRO review shall include review of the chain of custody to ensure that it is complete and sufficient on its face."

Another regulation provides that once the MRO reviews a laboratory test result, he or she must "report [to the employer] whether the test is positive or negative...." *See* 49 C.F.R. § 40.29(g)(3) (1997). Also, the MRO must send the employer "a signed, written notification" of the test results "within three business days of [his or her] review, pursuant to part 40 of this title." *See* 49 C.F.R. § 382.407(a) (1997). "A legible photocopy of the fourth copy of Part 40 Appendix A" can be used by a MRO as his or her written notification to employer. *Id.* Both Employer and MRO must "maintain" a record of the MRO's written notice of positive test results. *See* 49 C.F.R. § 382.401 (1997) [7]; 49 C.F.R. § 382.409(a) (1997).

At the evidentiary hearing, Employer's transportation supervisor identified all of Exhibit 1 as "coming from [E]mployer's business records." He testified that Employer keeps "these documents and others like them in the regular course of [its] business" and maintains "this type of document under the circumstances on all employees." Based on this evidence and relevant DOT regulations, we conclude that (1) Dr. Atkinson's written report at the bottom of page six, Exhibit 1, is evidence of a type that Employer had to commonly rely on when testing its workers for drugs; (2) it is a regular part of Dr. Atkinson's business as Employer's MRO to make a written report to Employer of his evaluation of laboratory results within three days of his review; and (3) Dr. Atkinson's report was made in the regular course of his business as Employer's MRO. We find Dr. Atkinson's report was admissible as a business record pursuant to 8 CSR § 10–5.015(11)(B)(4) (July 30, 1997) and 8 CSR 10–5.015(11)(B)(5) (July 30, 1997). Claimant's hearsay objection was unavailing. Commission erred when it concluded otherwise.

Since Dr. Atkinson's report was a business record, Commission erred in relying on the principle that "hearsay evidence will not qualify as competent and substantial evidence upon the whole record to support a finding of fact by an administrative agency." *Wilson*, 573 S.W.2d at 121. In *Wilson*, a general manager's testimony about a crucial conversation between the claimant and the claimant's supervisor was "plainly and unmistakably hearsay." *Id.* at 120. The administrative agency made no specific finding on the claimant's credibility; consequently, the reviewing court could not ignore the claimant's account of the conversation which supported his claim that he left his job for good cause. *Id.* at 121. Since the appeals court could not consider the hearsay evidence as competent and substantial evidence, it was left with a record lacking evidence contradictory to the claimant's account. *Id.* Accordingly, the agency's finding that employee quit his job without good cause lacked evidentiary support and reversal was necessary.

Clearly, *Wilson* is distinguishable. In *Wilson*, a dispositive finding of fact was based solely on inadmissible hearsay that should have been excluded had a timely objection been made. Contrarily, as explained above, page six of Exhibit 1 was admissible as a business record. Commission's hearsay analysis was wrong. Commission misinterpreted the law when it found that *Wilson* applied here.[8] Employer's first point is granted.[9]

7. In pertinent part, 49 C.F.R. § 382.401 (1997) provides:

"(c) Types of Records. The following specific types of records shall be maintained. 'Documents generated' are documents that may have to be prepared under a requirement of this part. If the record is required to be prepared, it must be maintained.

....

"(2) Records related to a driver's test results:

....

"(iii) Documents sent by the MRO to the employer, including those required by § 382.407(a)."

8. Whether *Wilson* is still good law in light of 8 CSR § 10–5.015(11)(B)(4) and § 536.070(8) and more recent case law is a question we need not decide. The foregoing provisions have nearly identical language: "Any evidence received without objection which has probative value shall be considered by [an administrative body] along with the other evidence in the case." This language was cited in *Housing Auth. v. Bd. of Adjustment*, 941 S.W.2d 725 (Mo.App.1997) for the proposition that hearsay evidence admitted without objection having probative value may be used as "substantial and competent evidence" to support an agency's finding. *Id.* at 727[4].

9. In part, the Commission couched its conclusions of law as a "weighing [of] employer's hearsay evidence versus claimant's live testimony" per *Wilson* principles. Again, the Commission appears to have misread *Wilson*. Had *Wilson*

Commission's decision is reversed. The case is remanded for reconsideration and further proceedings consistent with this opinion.

GARRISON, C.J., and BARNEY, J., concur.

applied, the Commission would not have had any evidence to "weigh." We have decided differently, finding that the subject record was competent and admissible evidence. Although we have a firm view of how the evidence should be weighed, that is not our prerogative. *See G.C. Services Ltd. v. Labor & Indus.*, 913 S.W.2d 411, 414[4] (Mo.App.1996). It is for the Commission on remand to weigh Employer's evidence that Claimant tested positive for marijuana against Claimant's testimony that he did not use marijuana but might have tested positive because of "CHAT," a "legally obtainable" herb grown only in Africa.